## MASSIE v. WATTS.

The practice in Kentucky to call a jury to ascertain the facts in chancery causes is incorrect.

A suit in chancery by one who has the prior equity against him who has the eldest patent is in its nature local, and if it be a mere question of title, must be tried in the district where the land lies.

But if it be a case of *contract*, or *trust*, or *fraud*, it is to be tried in the district where the defendant may be found.

If, by any reasonable construction of an entry, it can be supported, the court will support it.

When a

THIS was an appeal from the decree of the circuit court of the United States, for the district of Kentucky, in a suit in equity brought by Watts, a citizen of *Virginia*, against Massie, a citizen of *Kentucky*, to compel the latter to convey to the former 1,000 acres of land in the state of *Ohio*, the defendant having obtained the legal title with notice of the plaintiff's equitable title.

The bill stated that the defendant Massie (the appellant) had contracted with a certain *Ferdinand Oneal*, to locate and survey for him a military warrant for 4,000 acres in his name, (which the plaintiff afterwards purchased for a valuable consideration,) and to receive for his services in locating and surveying the same, the sum of 50*l*. which the plaintiff paid him. That the defendant located the said warrant with the proper surveyor, and being himself a surveyor, he fraudulently made a survey purporting to be a survey of part of the entry, but variant from the same, and contrary to law, whereby the survey was entirely removed from the land *entered* with the surveyor, for the fraudulent purpose of giving way to a claim of the defendant's which he surveyed on the land entered for the plaintiff, whereby the plaintiff lost the land, and the defendant obtained the legal title. That the land adjoins the town of Chillicothe, and is worth fifteen dollars an acre. The bill prays that the defendant may be compelled to convey the

land to the plaintiff, or if that is not in his power, that he make compensation in damages.

The defendant, by his answer, denied that he contracted with the *plaintiff* to locate and survey the warrant in the name of Oneal, but admits that, in 1787, he was requested by *W. Ellzey*, to *locate* the warrant for Oneal; that Ellzey informed him he was not authorized to make any special contract with the defendant for his services, but he had no doubt, if he did the business, he would receive the customary compensation, which was 12*l.* 10*s.* per 1,000 acres, or one third of the land.

He admits that he made the entry, and that the plaintiff has paid him the 50*l.* But he denies that he made the survey improperly, or with a fraudulent intention. He says that in the year 1793, as a deputy-surveyor, he surveyed the land on the Scioto, on which the claim of Oneal depended; but not wishing to take upon himself the construction of Oneal's entry, he merely meandered the river, and referred the question to the principal surveyor, by whose directions he made the survey for Oneal in 1796, and without any instructions from Oneal or any agent for him. That when the entry was made, the country had been but recently explored, and none of the locators knew by survey the meanders of the *Scioto.* He does not admit that the entry has been surveyed contrary to location, but he surveyed it as he would have surveyed it for himself.

He admits he made an entry for himself, and intended to appropriate the vacant land, but it was not by any procurement of his, that his patent was prior to Oneal's. That the plaintiff did not become wholly interested in the claim until long after the survey was made.

After the defendant's answer came in, the plaintiff amended his bill by making Anderson (the principal surveyor) a defendant, and charged that if the survey for Oneal was made by the directions of Anderson, as alleged by the defendant Massie, it was with a fraudulent design on the part of Anderson to appro-

MASSIE
v.
WATTS.

given quantity of land is to be laid off on a given base, it shall be included within four lines forming a square, as nearly as may be, unless the form be repugnant to the entry.

If the calls of an entry do not fully describe the land, but furnish enough to enable the court to complete the location by the application of certain principles, they will complete it.

If a location have certain material calls sufficient to support it, and to describe the land, other calls less material and incompatible with the essential calls of the entry, may be discarded.

The rectangular figure is to be preserved, if possible.

If an agent locate land for himself which he ought to locate for his principal, he is in equity a trustee for his principal.

MASSIE
v.
WATTS.

priate to himself the land described in Oneal's entry, and that if he had no design, he was still responsible for the consequences of the illegal survey.

Anderson by his answer denies all fraud, and most positively denies that he gave Massie any instructions to make the survey, as falsely stated in the bill. That the survey was made of 530 acres, in part of the entry, which survey was returned to his (Anderson's) office, and which he did not record for about the term of one year from the time he received it, doubting whether the survey had been properly made ; but after a critical examination of the subject he concluded that it was not improperly made and recorded it.

The plaintiff amended his bill again by charging that the defendant Massie was the owner of Powell's entry, and had surveyed and obtained a grant therefor, and calling upon him to answer when he became the purchaser of Powell's right.

To this Massie answered, that after surveying Oneal's entry in the spring 1797, he purchased Robert Powell's survey, before which time he had no interest in the land, and has *sold the whole of it*, but made a conveyance of only a part.

There had been certain facts found in the cause by a jury according to a practice heretofore adopted in chancery suits in the courts of Kentucky, but the court ordered " that the facts found by the jury should be set aside."

The following opinion of *Judge Innis* (Judge Todd being absent) states the facts of the case so fully that nothing need be added in stating the case.

" The complainant having acquired the equitable right to certain lands conferred on Ferdinand Oneal by the state of Virginia, as a bounty for military services performed by him as an officer during the revolutionary war, has instituted this suit with a double aspect, first, to recover one thousand acres of land,

which had been entered for Oneal on the Scioto river, upon a suggestion that the defendant Massie, who was the locator, had wrongfully deprived him of the land, by surveying Robert Powell's entry so as to cover part of Oneal's land, and, by a subsequent entry and survey of his own, hath taken the balance. *Secondly*, if the complainant shall establish his right to the land in contest, and cannot obtain a conveyance therefor, that the decree may be for the value thereof, in money. It appears from the pleadings in the cause that the defendant Massie has purchased Powell's land, and that he has appropriated, by entry and survey, the adjoining land. The three following entries were made upon the Scioto river adjoining each other. " No. 480: 1787. August 13, Major Thomas Massie enters 1,400 acres of land beginning at the junction of Paint creek with the Scioto, running up the Scioto 520 poles when reduced to a straight line, thence off at right angles from the general course of the river so far that a line parallel thereto will include the quantity."

" No. 503. Captain Robert Powell enters one thousand acres of land beginning at the upper corner, on the Scioto, of Major Thomas Massie's entry. No. 480. running up the river 520 poles when reduced to a straight line, thence from the beginning, with Massie's line so far that a line parallel to the general course of the river shall include the quantity."

" No. 509. Captain Ferdinand Oneal enters one thousand acres beginning at the upper corner on the Scioto of Robert Powell's entry. No. 503. running up the river 520 poles when reduced to a straight line, and from the beginning with Powell's line so far that a line parallel with the general course of the river shall include the quantity." Surveys have been made upon the entries of Thomas Massie and Robert Powell, so as to cover almost the whole base of 1,560 poles, the space which was allotted for the three claims on the river, and 530 acres of land have been surveyed for Oneal, by the defendant Massie in part of his entry, which it is impossible upon any construction he can

hold. To form a correct opinion in this case the several entries of Massie, Powell and Oneal must be brought into one view, and, as far as it is possible, consistent with the entries, to ascertain the object and intention of the locator. It is evident, from the manner in which these entries are worded, that the locator had no doubt in his mind, at the time the entries were made, of having given that space which would enable him to secure, by legal surveys, the quantity of land located for each person. It becomes, then, the duty of the court to consider the case with a reference to this object. No difficulty arises as to the manner in which the entry of Thomas Massie ought to be surveyed, the calls of his entry being express and positive. His entry ought to have been surveyed in the following manner; to begin, as he has done, at the junction of Paint creek, and the Scioto, and then to run up the river so far as will ascertain the termination of the 520 poles called for on the river, when reduced to a straight line. This will reduce his base to a point below the first flooded land represented in the connected plat, above the mouth of Paint creek, thence he is to run out at right angles with the general course of the river. The unexpected bends in the Scioto river have induced such a construction to be placed on the entries of Powell and Oneal, by the defendant Massie that, in executing the surveys of Thomas Massie and Powell, he considered Oneal as being excluded from obtaining any part of the land upon the base of 1,560 poles, the space allotted for three entries.

The contest in this case, in consequence of the manner which has been pursued in making Massie's and Powell's surveys, rests principally upon the construction which is to be given to Powell's and Oneal's entries; and, as the latter is dependent on the former, equity requires that, if it be possible to secure to each his portion of land agreeably to their entries, it ought to be so decided, provided it can be done consistently with the spirit of the entries, and the real intention of the locator.

From an attentive consideration of the entries, the

object of the locator was evidently to give to each of the proprietors of the warrants an equal base on the river, and make it the ruling principle in shaping the surveys. It only remains, then, to be considered whether the words in the entries will bear such a construction as to effectuate the object, and secure the lands to Powell and Oneal, which the locator intended at the time he made the entries.

Powell's first call is to run up the river Scioto ; and the description given of the land contemplated to be covered by the entry, is that portion which shall lie within a line parallel to the general course of the river. From a view of the Scioto river, as laid down in the connected plat, and the shape which Thomas Massie's land will assume, when run out agreeably to his entry, it becomes necessary, in order to give Powell the land parallel to the general course of the river, to lay it off by commencing the survey on the river at the extremity of the 520 poles above Massie, and thence to run out at right angles to the general course of the river, so far that a parallel line to the river, extending to Massie's back line, and binding on Massie's lines, will include his one thousand acres. Reverse this mode of surveying Powell's entry, and begin at Massie's upper corner on the river and run out with Massie's line, it will make Massie's line the governing principle of the survey, and not the river, which construction will be contrary to the true meaning expressed in the entry, the intention of the locator, and place the survey on the land of Oneal, whose interest, as a subsequent locator, is equally entitled to protection with that of the prior.

The rule adopted in construing this entry must justify the manner of executing a survey agreeably thereto by running five lines instead of four to circumscribe the land. This proceeds from an accidental circumstance occasioned by the great bend immediately above the mouth of Paint creek, which renders it necessary to comply with the governing principle in the entry for the land to be "parallel to the general course of the river." By thus executing Powell's survey, a portion of land will remain on the river, and parallel thereto

MASSIE
v.
WATTS.

sufficient to satisfy Oneal, the calls of whose entry are similar to Powell's calling for him as he does for Massie.

Oneal's survey ought, therefore, to have been executed in the same manner as it is now decided. Powell's ought to have been made by beginning at the termination of 520 poles on the river, and thence to run off at right angles from that point.

Having decided the manner in which the entries of Massie, Powell, and Oneal ought to have been surveyed, it remains yet to say what is the situation of the survey for 530 acres of land made for Oneal, and placed on the record book of the surveyor. To make this act obligatory on the party it was necessary that all the acts done should have been performed or approved by Oneal himself, or some one of his assignees, or by some agent authorized for that purpose. There is no evidence in the cause to this effect: the placing the survey on the surveyor's book is therefore an unauthorized and void act.

In the case of Wilson and Mason, in the late district court, the court decided that a survey once recorded was not afterwards in the power or control of the party. This opinion was predicated on two facts found in that cause, that William Mason was the agent of the defendant, and approved of what had been done by registering the surveys of Mason although cautioned of his danger.

Upon this view of the case, the court is of opinion that the complainant recover of the defendant one thousand acres of land, to be laid off agreeably to the mode pointed out as the proper manner for surveying Oneal's entry.

That upon the defendant Massie's conveying the said one thousand acres of land to the complainant, he, the complainant, shall assign to the said defendant all his right in and to one thousand acres of the warrant issued to the said Oneal.

So far as this suit relates to the defendant Anderson, it is decreed and ordered that the bill be dismissed as to him with costs, the court being of opinion he was improperly made a party. It is therefore considered by the court, that the defendant Anderson recover of the complainant his costs by him in this behalf expended!

MASSIE
v.
WATTS.

And afterwards, at the same term, the following order was made herein. The court in pursuance of the opinion and decree delivered in this cause on the eighth day of this month (December) doth order, that the surveyor of Ross county do go on the land in controversy and lay off the same as follows : Thomas Massie's entry by beginning at the mouth of Paint creek, thence up the Scioto so far as will amount to 520 poles when reduced to a straight line, and from each end of this base at right angles from the general course so far that a line parallel with that general course will produce the quantity of fourteen hundred acres. Robert Powell's entry by beginning at the upper corner of Thomas Massie's entry, that is, 520 poles from the mouth of Paint creek, thence up the river so far as will amount to 520 poles when reduced to a straight line, and from the end of this base line, a line is to be run at right angles to the general course of that portion of the river which is occupied by the base line and from the beginning with the lines of Thomas Massie, that is, his second and third lines, so far that a line parallel to the general course of this base line will produce the quantity of one thousand acres. Ferdinand Oneal's entry by beginning at the upper corner of Robert Powell's entry when laid off as aforesaid, thence up the Scioto so far as will amount to 520 poles when reduced to a straight line, and from the end of this base line a line is to be run at right angles from the general course of that portion of the river which is occupied by the base line, and from the beginning with the second and third lines of Powell so far that a line parallel to the general course of the base line will produce the quantity of one thousand acres.

And the court doth further order, that the said sur-

veyor do make and bound the said survey of Oneal when laid off as aforesaid, and make report of the metes and bounds and his proceedings herein to the next court."

At May term, 1808, the surveyor having made his report, a final decree was entered in conformity with the principles laid down in the interlocutory order, from which the defendant appealed.

*Pope*, for the plaintiff in error, contended that the circuit court in *Kentucky*, had no jurisdiction of a case involving the title of land lying in *Ohio*, unless it be upon a *personal contract*. Here was no personal contract. Although the bill states an agreement respecting the surveying of the land, yet it is denied by the answer, and not proved. Besides, if there was such a contract, it is not upon the contract that the suit is brought. It is a mere question which of the parties has the better right under their several entries. The remedy in chancery in Kentucky is merely a substitute for a *caveat*. It is in the nature of a real action, which is local. A court in New-York could not try the title of land in Virginia, unless it were upon a personal contract. Even the action of trespass *quare clausum fregit* is a local action, although it sounds in damages, and seems to be of a personal nature.

*P. B. Key*, contra. The bill is for a specific performance of a trust. The party who has the legal estate by a younger entry, is a trustee for him who had the elder entry; and upon this is founded the jurisdiction of a court of equity. The action is *in personam*, not *in rem*. The remedy sought is, a decree that the defendant should convey the land to the plaintiff. If the defendant refuses to perform the decree, the compulsory process is *in personam*, by way of attachment for a contempt of court. The whole and original jurisdiction of a court of equity is *in personam*, and not *in rem*.

But the act of congress is imperative. The circuit court of Kentucky has jurisdiction in all cases at law and in equity between citizens of different states, if

the defendant be found in the district of Kentucky. The same jurisdiction might have been exercised by the *state* courts of Kentucky.

*H. Clay*, same side. The question is, whether the nature of the case controls the general expressions of the constitution, and the act of congress.

If Watts could not sue Massie in Kentucky, he would be without remedy. He could not sue in Ohio, because the defendant could not be found there.

The ground of jurisdiction is *trust*. The case also contains the peculiar relation of the parties to each other. Massie was employed by Watts's assignor to locate the land. In this respect it is a case of contract.

*Pope*, in reply. The circuit courts of the United States have concurrent jurisdiction with the courts of the state in which they sit.

The state courts of Ohio unquestionably had jurisdiction. The circuit court, therefore, of the district of Ohio is the court of the United States which had cognisance of the case.

THE COURT having intimated an opinion in favour of the jurisdiction of the court below, the counsel proceeded to argue the question of location. But as the subject is very intricate without a copy of the plats in the case, and as the opinion of the court is very full, it is deemed unnecessary to report the arguments of counsel upon that point.

### February 28.

MARSHALL, Ch. J. delivered the opinion of the court as follows:

This suit having been originally instituted, in the court of Kentucky, for the purpose of obtaining a conveyance for lands lying in the state of Ohio, an objection is made by the plaintiff in error, who was the

defendant below, to the jurisdiction of the court by which the decree was rendered.

Taking into view the character of the suit in chancery brought to establish a prior title originating under the land law of Virginia against a person claiming under a senior patent, considering it as a substitute for a *caveat* introduced by the peculiar circumstances attending those titles, this court is of opinion, that there is much reason for considering it as a local action, and for confining it to the court sitting within the state in which the lands lie. Was this cause, therefore, to be considered as involving a naked question of title, was it, for example, a contest between Watts and Powell, the jurisdiction of the circuit court of Kentucky would not be sustained. But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practised on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and the circumstance, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction.

In the celebrated case of *Penn* v. *Lord Baltimore*, the Chancellor of England decreed a specific performance of a contract respecting lands lying in North America. The objection to the jurisdiction of the court, in that case, as reported by Vezey, was not that the lands lay without the jurisdiction of the court, but that, in cases relating to boundaries between provinces, the jurisdiction was exclusively in the king and council. It is in reference to this objection, not to an objection that the lands were without his jurisdiction, that the chancellor says, " This court, therefore, has no original jurisdiction on the direct question of the original right of boundaries." The reason why it had no original jurisdiction on this direct question was, that the decision on the extent of those grants, including dominion and political power, as well

as property, was exclusively reserved to the king in council.

In a subsequent part of the opinion, where he treats of the objection to the jurisdiction of the court, arising from its inability to enforce its decree *in rem*, he allows no weight to that argument. The strict primary decree of a court of equity is, he says, *in personam*, and may be enforced in all cases where the person is within its jurisdiction. In confirmation of this position he cites the practice of the courts to decree respecting lands lying in Ireland and in the colonies, if the person, against whom the decree was prayed, be found in England.

In the case of *Arglasse* v. *Muschamp*, 1 *Vernon*, 75. the defendant, residing in England, having fraudulently obtained a rent charge on lands lying in Ireland, a bill was brought in England to set it aside. To an objection made to the jurisdiction of the court the chancellor replied, " This is surely only a jest put upon the jurisdiction of this court by the common lawyers; for when you go about to bind the lands and grant a sequestration to execute a decree, then they readily tell you that the authority of this court is only to regulate a man's conscience, and ought not to affect the estate, but that this court must *agere in personam* only ; and when, as in this case, you prosecute the person for a fraud, they tell you that you must not intermeddle here, because, the fraud, though committed here, concerns lands that lie in Ireland, which makes the jurisdiction local, and so wholly elude the jurisdiction of this court." The chancellor, in that case, sustained his jurisdiction on principle, and on the authority of *Archer* and *Preston*, in which case a contract made respecting lands in Ireland, the title to which depended on the act of settlement, was enforced in England, although the defendant was a resident of Ireland, and had only made a casual visit to England. On a rehearing before Lord Keeper North this decree was affirmed.

In the case of *The Earl of Kildare* v. *Sir Morrice*

*Eustace and Fitzgerald*, 1 *Vern.* 419. it was determined that if the trustee live in England, the chancellor may enforce the trust, although the lands lie in Ireland.

In the case of *Toller* v. *Carteret*, 2 *Vern.* 494. a bill was sustained for the foreclosure of a mortgage of lands lying out of the jurisdiction of the court, the person of the mortgagor being within it.

Subsequent to these decisions was the case of *Penn* against *Lord Baltimore*, 1 *Vez.* 444. in which the specific performance of a contract for lands lying in North America was decreed in England.

Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.

The inquiry, therefore, will be, whether this be an unmixed question of title, or a case of fraud, trust or contract.

The facts in this case, so far as they affect the question of jurisdiction, are, that, in 1787, the land warrant, of which Watts is now the proprietor, and which then belonged to, Oneal, was placed without any special contract, in the hands of Massie, as a common locator of lands. In the month of August in the same year he located 1,000 acres, part of this warrant, to adjoin a previous location made on the same day for Robert Powell.

In the year 1793 Massie, as deputy-surveyor, surveyed the lands of Thomas Massie, on which Robert Powell's entry depended, and the land of Robert Powell, on which Oneal's entry, now the property of Watts, depended. On the 27th of June, 1795, Nathaniel Massie, the plaintiff in error, entered for himself 2,366 acres

of land to adjoin the surveys made for Robert Powell, Thomas Massie and one Daniel Stull. The entry of Daniel Stull commences at the upper corner of Ferdinand Oneal's entry on the Scioto, and the entry of Ferdinand Oneal commences at the upper corner of Robert Powell's entry on the Scioto; so that the land of Oneal would be supposed, from the entries, to occupy the space on the Scioto between Powell and Stull. Nathaniel Massie's entry, which was made after surveying the lands of Thomas Massie and of Robert Powell, binds on the Scioto, and occupies the whole space between Powell's survey and Stull's survey.

In the year 1796, Nathaniel Massie surveyed 530 acres of Oneal's entry, chiefly within Stull's survey, and afterwards, in the spring of 1797, purchased Powell's survey. Nathaniel Massie's entry is surveyed and patented. In 1801 Massie received from Watts, in money, the customary compensation for making his location.

It is alleged that Nathaniel Massie has acquired for himself the land which was comprehended within Oneal's entry, and has surveyed for Oneal land to which his entry can by no construction be extended.

If this allegation be unsupported by evidence, there is an end of the case. If it be supported, had the court of Kentucky jurisdiction of the cause?

Although no express contract be made, yet it cannot be doubted that the law implies a contract between every man who transacts business for another at the request of that other and the person for whom it is transacted. A common locator who undertakes to locate lands for an absent person is bound to perform the usual duties of a locator, and is entitled to the customary compensation for those duties. If he fails in the performance of those duties, he is liable to the action of the injured party, which may be instituted wherever his person is found. If his compensation be refused, he may sue therefor in any court within whose jurisdiction the person for whom the location was made

can be found. In either action the manner in which the service was performed is inevitably the subject of investigation, and the difficulty of making it cannot oust the court of its jurisdiction.

From the nature of the business, and the situation of the parties, the person for whom the location is made being generally a non-resident, and almost universally unacquainted with the country in which his land is placed, it is the duty of the locator not only to locate the lands, but to show them to the surveyor. He also necessarily possesses the power to amend or to change the location if he has sufficient reason to believe that it is for the interest of his employer so to do. So far as respects the location he is substituted in the place of the owner, and his acts done *bona fide* are the acts of the owner.

If, under these circumstances, a locator finding that the entry he has made cannot be surveyed, instead of withdrawing it or amending it. so as to render it susceptible of being carried into execution, secures the adjoining land for himself, and shows other land to the surveyor which the location cannot be construed to comprehend, it appears to this court to be a breach of duty, which amounts to a violation of the implied contract, and subjects him to the action of the party injured.

If the location be sustainable, and the locator, instead of showing the land really covered by the entry, shows other land, and appropriates to himself the land actually entered, this appears to the court to be a species of *mala fides* which will, in equity, convert him into a trustee for the party originally entitled to the land.

In either case the jurisdiction of the court of the state in which the person is found, is sustainable.

If we reason by analogy from the distinction between actions local and transitory at common law, this action would follow the person, because it would

be founded on an implied contract, or on neglect of duty.

If we reason from those principles which are laid down in the books relative to the jurisdiction of courts of equity, the jurisdiction of the court of Kentucky is equally sustainable, because the defendant, if liable, is either liable under his contract, or as trustee.

The case, then, as presented to the court, gives it jurisdiction, and the testimony must be examined to ascertain how far the bill is supported.

The entry of Thomas Massie begins at the junction of Paint creek with the Scioto, and runs up the Scioto 520 poles, when reduced to a straight line, thence off at right angles from the general course of the river, so far that a line parallel thereto will include the quantity.

Respecting this entry there is no controversy.

Robert Powell enters 1,000 acres of land, " beginning at the upper corner on the Scioto, of Major Thomas Massie's entry, No. 480. running up the river 520 poles, when reduced to a straight line, thence from the beginning with Massie's line, so far that a line parallel with the general course of the river shall include the quantity."

Then Ferdinand Oneal enters 1,000 acres of land, beginning at the upper corner on the Scioto, of Robert Powell's entry, No. 503. running up the river 520 poles, when reduced to a straight line, and from the beginning with Powell's line, so far that a line parallel with the general course of the river shall include the quantity.

As Oneal's entry depends on Powell's, it is necessary to ascertain the land taken by Powell, before that of Oneal can be accurately determined.

Had the general course of the Scioto continued

nearly the same, no difficulty would have been found in this case. The surveys might have conformed literally to all the calls of each entry, and each tract would have constituted nearly a rectangular figure with a base of 520 poles on the river, and a back line parallel to that base. But the unexpected bends of the Scioto have deranged the uniformity of this chain of locations, and produced questions of considerable intricacy respecting the ground which must be covered by them.

Thomas Massie's entry being of 1,400 acres, and Powell's of only 1,000 acres, with a base of the same length on the river, it probably was thought certain that Massie's upper line would extend beyond Powell's land, and that the line of Powell, which was to run parallel to the river, would intersect Massie's upper line. Powell's entry, therefore, calls to run from the river with Massie's line, so far that a line parallel to the general course of the river will include the quantity. Upon actual survey the course of the river is found to be such that a line parallel thereto, drawn from the end of Massie's line, would not include 200 acres of land. Under these circumstances Powell must lose between 8 and 900 acres of land, if his entry cannot be so construed as to extend beyond the length of Massie's line.

From the peculiar situation of titles acquired under the land law of Virginia, a law which offered for sale an immense unexplored wilderness, covered with savages equally fierce and hostile, leaving to the purchaser the right to place his warrant, which was the evidence of his purchase, on any land not previously appropriated, and requiring him to make his entries so certainly that any other person might locate the adjacent residuum, it followed inevitably that immense difficulties would occur, and that locations must often be lost, or receive that certainty which the law required from principles adapted to the general state of things in the country, but which were not precisely foreseen when the locations were made.

These principles have been laid down by the courts, and must be considered as expositions of the statute. A great proportion of the landed property of the country depends on adhering to them.

The great and equitable foundation on which they stand is this. If, by any reasonable construction of an entry, it can be supported, the courts will support it. This principle absolutely requires that all discretion, with respect to the mode of surveying an entry, should be surrendered. For if a location might be surveyed in various ways, then it is vague, and no subsequent locator would know how to enter the adjacent residuum. The court, therefore, is compelled to say in what manner every location, which appears, in its terms, to reserve some power in the locator to vary its form, shall be surveyed.

In the exercise of this essential and necessary power, they have declared that when a given quantity of land is to be laid off on a given base, it shall be included within four lines, so that the lines proceeding from the base shall be at right angles with it, and the line opposite the base shall be parallel to it, unless this form be repugnant to the entry.

The consequence of this principle is, that if the calls of an entry do not fully describe the land, but furnish enough to enable the court to complete the location by the application of certain principles, they will complete it.

They have also decided that, if a location have certain material calls sufficient to support it, and to describe the land, other calls less material and incompatible with the essential calls of the entry, may be discarded.

These principles, it is believed, will enable the court to ascertain, in a reasonable manner, the land covered by Powell's location.

The beginning is the upper corner of Massie on the

MASSIE
v.
WATTS.

Scioto. A base line upon the river is then given to consist of 520 poles, when reduced to a straight line. Massie's upper line, to its whole extent, if necessary, is also given, and a back line parallel to the base is given. The side line opposite Massie's line, and the course from the termination of Massie's line to the back line are wanting, and are to be supplied by construction.

The material inquiry, so far as respects the present cause, is, in what direction shall Powell's upper line, extending back from the river to the line parallel to the general course of the river, be run? That line is not given, and is, consequently, to be supplied by construction.

According to the uniform course of decisions, Powell's upper line must project from the base at right angles with it, unless there shall be some other call in the entry which controls this general principle. It is contended that it is controlled by the call to run with Massie's line from the beginning. Massie's line not being at right angles with the base line, it is argued that Powell's opposite line, discarding the rectangular principle, must be parallel to the line from the beginning.

But the court does not concur with the counsel for the plaintiff in error in this opinion. The principle, that the rectangular figure is to be preferred to any other, and is to be preserved whenever it can be preserved, originates in the necessity of adopting some regular figure in order to give to locations that certainty which is not always to be found in their terms, and in the superior convenience of that figure over every other, with respect to the adjacent residuum. These motives apply to a part as well as to the whole of an entry. If one location be made upon another so that the lines of that other bind the entry on one side, and then a precise line be called for from the beginning to run a certain distance, from the end of which a line is to be drawn, and to continue until a line, parallel to the first or base line, or to some given point in

the lines of the person on whom the location is made, shall include the quantity, the same respect for certainty and convenience which induced originally the adoption of the rectangular figure would seem to require its adoption with respect to those lines which did not receive a different direction from the positive calls of the location. On one side there might be several different lines; but this would not seem to demand that, on the opposite side, the same variety should be preserved. It would be departing from the principle unnecessarily to require that the lines of the opposite side of the tract should be multiplied in order to be all parallel to the lines by which one side was unavoidably bounded. To the court it seems that the rectangular principle is always to be preserved where it can be preserved, that is, where there is no call in the entry applying to the lines which control them, and that, where it is necessarily departed from, the departure should not be extended further than the necessity requires.

In this particular case the location does not call for a line parallel to Massie's line, and, as Massie's line was to run at right angles from the general course of the river, and it was obviously expected Powell's line would not extend the whole length of Massie's line, it is clear that the locator expected that Powell's upper line, when at right angles with the course of the river, would be nearly parallel to Massie's line.

This may be considered as, in some degree, an auxiliary argument in favour of the opinion which is entertained by this court, that the circuit court did right in laying down the upper line of Powell at right angles with his base line.

This line being established, it is of little importance to Oneal's claim in what manner the remaining lines of Powell may be run.

The call of the location, so far as respects the side binding on Massie, is said to stop at Massie's northwestern corner. Is that line to be continued?

The conclusive objection to it is, that it would intersect the upper line before the quantity was obtained, and would, consequently, entirely defeat the call for a back line parallel to the course of the river.

Is a line at right angles with the general course of the river to be run from Massie's corner and continued until a line parallel to the base line would include the quantity?

This would be less exceptionable, but it would be departing further from the square, and might, in some instances, exhibit a plat the breadth of which would not be one third of its length. This point, however, is not critically examined, because it is of very little importance in the present cause. The upper line of Powell, on which Oneal binds, would be the same as far as it now runs, and should it be continued further, it would only take a small angle of Oneal's survey as made by order of the circuit court.

The court is of opinion that Powell's entry is rightly surveyed by order of the circuit court, and it is an additional argument in support of this opinion, that, with the exception of the angle unavoidably made by the interference of Massie, the general form of the land approaches a square more nearly than if laid off in any other manner.

If Powell's entry be correctly surveyed, Oneal's cannot be laid off otherwise than it is.

Were it even to be admitted that the original survey made for Powell was correct, it is entirely possible that the case of the plaintiff would not be materially improved thereby.

Powell's back line would probably terminate on the river; in which event, that would be his upper corner on the Scioto, which is called for as the beginning of Oneal's entry. Oneal then calls to run on the river a distance of 520 poles on a straight line, and with Powell's line so far as that a line parallel to the general

course of the river shall include 1,000 acres. Either this entry is rendered totally incapable of being surveyed in consequence of the call for Powell's line, or it must be so surveyed as to include almost the whole town of Chilicothe, and to take a considerable part of Massie's land.

It is, however, unnecessary to inquire what would be the rights of the person claiming Oneal's entry, in that event, since the court is satisfied that the survey, as directed by the circuit court, is correct.

The case, then, as made out in evidence, is this. Nathaniel Massie, employed to locate a military warrant for Oneal, has entered the warrant in pursuance of his engagement. On surveying the entries on which that of Oneal depended, he either believed that Oneal's entry was void from the repugnancy of its calls, or if not absolutely void, was incapable of covering the land which, according to legal construction, and the common understanding of those who might read the entries, it must be considered as covering; or he thought that, by obtaining a prior patent for the land, he might resist any claim which might afterwards be made by Oneal, or those claiming under him. If Massie really believed that Powell's entry was properly surveyed, and that Oneal's entry, as made, could not be surveyed, it was his duty to amend it, or, if that was not his duty, to place it elsewhere. For omitting so to do he is chargeable with such gross neglect of duty as to render him responsible in damages, had his construction of Oneal's location even been correct. But, if in this he was mistaken, it would be dangerous in the extreme, it would be a cover for fraud which could seldom be removed, if a locator, alleging difficulties respecting a location, might withdraw it and take the land for himself. He, however, has not withdrawn it, except so far as it may be impliedly withdrawn by the survey of 530 acres. With that exception, the entry still covers the land on which it was originally placed, and is still entitled to that land. But Massie, the agent of Oneal, has entered and surveyed a portion of that land for himself, and obtained a patent for it in his own name.

MASSIE
v
WATTS.

According to the clearest and best established principles of equity, the agent who so acts becomes a trustee for his principal. He cannot hold the land under an entry for himself otherwise than as trustee for his principal.

So far, then, as Oneal's land is within Massie's survey, Massie is a trustee for Oneal and his assignees, and upon the principle stated in the early part of this opinion, the court of Kentucky had jurisdiction of the cause.

But a part of Oneal's land is surveyed for Powell, and in a contest between his assignees and Powell, the court of Kentucky would have had no jurisdiction. This controversy, however, is not with Powell; it is with Massie, who is the purchaser of Powell's rights. The whole property being thus in the hands of Massie, and the court of Kentucky being in possession of the cause, and having clear jurisdiction of a part of it which decides the principle on which the whole depends, that court did right in deciding the whole cause, and decreeing to the assignees of Oneal the whole land originally included in the entry made for him.

Considerable doubts were entertained respecting the right of Watts to more than the unsurveyed part of the entry. But a majority of the court is of opinion that he stands precisely in the place of Oneal.

As Massie does not show that he had conveyed any of that part of Powell's survey which is included within Oneal's entry previous to the institution of this suit, or even now, the allegation that he has conveyed a part of Powell's survey could not furnish sufficient matter for preventing the decree which was rendered.

The decree of the circuit court is affirmed with costs.