Moncure, P.,
delivered the opinion of the court.
The court is of opinion that the appellant has a right to prosecute this appeal; for although pending the su^’ *n which the decrees appealed from were rendered, he became a bankrupt, whereby his estate generally was vested in his assignee in bankruptcy; yet he still had, and continues to have, such an interest in his estate, on account of his claim to exemptions and homestead of the same, as entitles him to prosecute this appeal, which therefore ought not to be dismissed on the ground of his want of such an interest.
The court is further of opinion that there is no error in the decree of the 29th day of May 1873, “because it decrees sale of land, the legal title to which is outstanding in Hercules Scott, who was no party to any of the suits, and was not in any way brought before the court.” The said legal title' became vested in Hercules Scott, if at all, under and by virtue of a deed of trust bearing date the 5th day of April 1861, which was about that time duly recorded in the clerk’s offices of Mercer and Tazewell counties, both of which were then in Virginia, and which adjoin each other. The land conveyed by the said deed is therein described as “a certain tract or parcel of land lying partly in Tazewell county, and the remaining part in Mercer county, the tract containing about three hundred and eighty ■acres, being the land whereon I now reside, containing' •all the land I own on the waters of the Brush Pork of Bluestone, the same composed of two surveys, be the ■same more or less, in trust to secure O. D. and H. W. Straley in the sum of $625, for which there is a bond this day executed, bearing date the 5th April 1861, and due twelve months after date, with interest from date.” .Since the date of that deed Mercer county has be *863 come a part of West Virginia, while Tazewell county, in which the mansion house on the said tract of land is situate, and in which the appellant always has resided, and yet resides, still remains in Virginia. The deed was executed only by Jacob Barger, the appellant. Hercules Scott did not execute the deed, and it does not appear that he ever acted under it, or accepted it, or its terms, or had any knowledge of its execution by the grantor. All the other parties having any interest in, or title to the land, resided and continue to reside in Virginia, except the said Scott and the Straleys, who, it seems, reside in West Virginia. The Straleys have filed their answer, and thus submitted themselves and their interest in the said land to the jurisdiction of the court in which the decrees appealed from were rendered. Under these circumstances, the circuit court of Tazewell county had jurisdiction to make the said decree of the 29th of May 1873, notwithstanding the said Hercules Scott was not a party to the suits in which it was rendered. Penn v. Lord Baltimore, 1 Vez. Sr. R. 444; Massie v. Watts, 6 Cranch 148; Dickinson v. Hoomes’ adm’r &c., 8 Gratt. 353, 410-428, and cases therein cited.
The court is further of opinion, that there is no error in the said decree, “because it decrees substitution in favor of Austin Mullins to the lien of a debt which was a liability incurred prior to the 10th day of April 1865, and then, without any waiver on the part of Jacob Barger, orders sale of the land on six, twelve and eighteen months, instead of one, two and three years credit. Code of 1873, eh. 174, § 3.” The liability of Austin Mullins as surety for Jacob Barger was incurred by a bond bearing date the 16th day of December 1870, payable twelve months after date, and executed in pursuance of an act approved May 28, *864 1870, entitled “ an act to prevent the sacrifice of personal property at forced sales”—Acts of Assembly, 1869-70, chapter 120, page 162; which bond by said act was required to be returned in the same manner as a forthcoming bond is required to be returned, and was declared, from and after its return, to have, as against the obligors therein then living, the force of a judgment. The surety in this bond, Mullins, was entitled by substitution to the lien thereby created under the said act; which lien certainly was to secure a debt contracted, or liability incurred, after the 10th day of April 1866. Id., ch. 277, p. 426; Code, ch. 174, § 3, p. 1123.
In fact, all the judgments on account of which the land was decreed to be sold in these cases, were obtained after that day; and the deed of trust in the proceedings mentioned, of the 14th day of December 1871, from said Barger to Evan H. Brown, conveying the said land and other property to secure a debt therein mentioned, due by said Barger to C. D. and H. "W. Straley, to satisfy which, as well as the said judgment, the said sales was decreed to be made, expressly authorized a sale under the said deed to be made for cash. It was not error, therefore, to decree a sale of the said land on a credit of six, twelve and eighteen months; as was done in the said decree of the 29th day of May 1873.
The court is further of opinion, that there is no euror in the said decree, “ because it decrees a sale of the land in the bill mentioned, which was three hundred and eighty acres, lying partly in Virginia and partly in West Virginia, thus going beyond the power and jurisdiction of the court.”
The reasons and authorities against this third assignment of error are the same as those already *865 stated and cited in regard to the first assignment of error.
The court is further of opinion, that there is no error in the said decree, “because it did not specify in exact terms the land to be sold, but used such vague and indefinite terms with regard to it, that it was within the power or caprice of the commissioners to sell all the lands mentioned in the Brown trust deed.”
The decree was for the sale of the land in the bill and proceedings mentioned, or so much thereof as might suffice to satisfy the. purposes of the decree. The land is described with sufficient certainty in the bills, and the decree could be made certain by reference to the bills. “That is certain which may be made certain,” applies to the case.
The court is further of opinion that there is no error in the said decree, “because it did not dismiss the Marrs and Bucldand bills and the Buckland petition, when the charges of fraud so freely made therein were ascertained and decreed to he false.”
The judgment creditors of Barger had a right to subject to the liens of their judgments respectively such real estate, or such interest in such real estate, as was liable thereto. If he had conveyed any of his real estate by a deed fraudulent as to his creditors, they had a right to impeach such deed for fraud, and, if proved to be fraudulent, to have it set aside and the land entirely subjected to the payment of the debts due by him to them. Or, if the deed supposed and charged by the judgment creditors to be fraudulent as to them should turn out on investigation and enquiry' to be fair and bona fide and intended to secure an honest debtor, and anything should remain after satisfying such debt, they would have a right to subject such residue to the payment of the debts due to them, and *866 to do so in the same suit brought by them to impeach and set aside the deed, without the necessity of dismissing that suit and bringing another. They may bring one suit in equity with a double aspect, and claim, in the alternative, to subject the whole estate conveyed by the supposed fraudulent, deed, if it turn out to be fraudulent, or the surplus which may remain after satisfying any incumbrance on the estate which may turn out to be valid against creditors. This is common practice, both convenient and economical, well sustained by authority.
The court is further of opinion that there is no error in the said decree, “ because it decreed large debts against Jacob Barger in favor of C. D. and H. W. Straley, his co-defendants, when, first, there was nothing in the pleadings to justify such a decree between co-defendants; second, they had not been required to account for the thousands of dollars worth of property conveyed to their trustees for their benefit; and, third, they had been freely charged in two of the bills and the Buckland petition with guilty knowledge and participation in the frauds alleged against Jacob Barger.”
First. There was enough in the pleadings to justify such a decree between co-defendants.
The claims in the bills are of judgment liens upon the land conveyed by the judgment debtor to secure a debt alleged by him to be due to his co-defendant, but alleged by the judgment creditors to be a fraudulent contrivance as to them, or not to be due, or not to be due in so large an amount as to absorb the whole value of the land. In such a case it is manifest that there would be amply enough in the pleadings to warrant any decree between co-defendants which justice might require. Such a decree would, in effect, be a part of the relief to which the judgment creditors *867 would be entitled against their debtor. They would have a right to have the prior lien in favor of the co-defendant discharged, in order that the residue may be applied to the payment of their judgments.
Second. It is not alleged that they (the Straleys) have ever received any of the property conveyed to their trustees, or either of them for their benefit. Ho such allegation has been made, either by Barger or any of the other parties. Ho motion has been made by any party for any enquiry on the subject. If such ■an enquiry had been asked for, it would no doubt, as it should, have been, ordered. Probably it was not asked for, because it was known that none of the property had come to the hands of the trust creditors or their trustees, and because it was desired to avoid unnecessary expense. It may be asked for hereafter if •desired. The deeds of trust were not executed by the trustees nor the trust creditors.
Third. As the proofs did not sustain the charges made in two of the bills,, and the Buckland petition against the trust creditors of guilty knowledge and participation in the frauds alleged against Jacob Barger, they were entitled to decrees against him for the debts due them by lien and secured by the deeds of trust, in order that the surplus might be ascertained and paid to the judgment creditors.
The court is of opinion that there is no error in the said decree for the grounds assigned on the seventh, eighth, ninth and tenth assignments of error as follows, to wit:
“ 7th. Because it permitted the parties to an angry •controversy based upon charges of fraud, plaintiffs and defendants, to combine together against the other defendant for the purpose of dividing his property ;among them. If the charges of fraud were true, then *868 the Straleys were particeps criminis, and entitled to no favor from the court. If they were false, then the plaintiffs who made them deserved no countenance in a forum of conscience.”
This has been already answered.
“8th. Because it decreed in favor of J. W. Buck-land for Tabor, without requiring process to be properly executed on Jacob Barger in that cause.”
Whether properly executed on him in that cause or not, it was properly executed on him in the other causes which came on to be heard together with that cause. He appeared and made defence to all the causes, without objecting that process had not been properly executed on him in that cause. He therefore waived the objection on that ground, if he had any.
“ 9th. Because the court had no right to sell to pay inferior debts, lands conveyed in trust, without either setting aside the deeds and divesting the trustees of the title, or else compelling a full settlement of the trusts, and requiring all the property conveyed in trust to be brought before it or accounted for.”
This has already been sufficiently answered.
“10th. The causes having been consolidated, and two of them having been brought in the same court with knowledge of the pendency of the first therein, it was error to decree separate costs against the defendant, Barger, in each case, especially when the charges of fraud were not sustained.”
The plaintiffs in the several suits had a right to bring them severally and to recover several costs; and it is doubtful whether they could have been consolidated without their consent. Claiborne v. Gross &c., 7 Leigh 331. The case is different from that of Stephenson v. Taverners, 9 Gratt. 398, which was a creditors’ suit for the administration of assets, in which all the *869 ■creditors ought to come in and prove their claims under a decree for an account in a suit brought by one or more of the creditors, either for himself or themselves alone, or in behalf also of all other creditors who might choose to come in and prove their claims before the commissioner. Even in such a case the creditors may commence their suits severally, but must unite in taking one account under the first decree which is made for that purpose in any of the suits. Id., and the authorities cited. But even in such cases as are now under consideration, they should at least be heard together, if not consolidated, and that is what was done in these cases. It does not appear that more costs were decreed in them in favor of the plaintiffs than were proper.
But the court is further of opinion, that in the decree made in these causes on the 5th day of September 1873, the circuit court erred in overruling the ■exceptions of the defendant Barger to the report of the commissioners appointed to sell the land in the bills mentioned, and in confirming the said report, and in appropriating any part of the proceeds of said sale.
There is too much uncertainty as to what land was sold, or intended to be sold, by the commissioners, to warrant the confirmation of the sale and their report. They report that “they sold the tract of land in the bill mentioned, known as the home tract, at public outcry, to C. D. and H. W. Straley, on the 29th day of July 1873, that being court day, for the sum of $1,700, that being the highest bid offered, &c.” blow, “the tract of land in the bill mentioned, known as the home tract,” is further described in the different bills as lying partly in Tazewell county, Virginia, and partly in Mercer county, "West Virginia, but how *870 much in each is differently stated in’the different bills.. Did the commissioners sell and intend to sell the-tract, or only so much as is situated in Tazewell county? From their report, it is doubtful. They ^ere^n ña7) that “they sold the tract in the bill mentioned known as the home tract;” which seems to embrace the whole tract lying in both counties, described in the deed as containing three hundred and eighty acres. But in an addendum to their report they further say, “that they find from the commissioner’s book, that the aforesaid lands so sold as aforesaid, was assessed at the last assessment made for the purposes of taxation, at $1,189.50. See abstract from commissioner’s books herewith filed, marked S. H. The land sold for more than its assessed value.” From the-abstract referred to, the quantity of the land assessed is described as one hundred and eighty-three acres;, which of course was only that part of the tract situated in Tazewell county, and that would seem therefore to be the only land intended to be sold. If the-whole tract of three hundred and eighty acres was-intended to be sold, the sale was no doubt at a sacrifice. If only the one hundred and eighty-three acres-lying in Tazewell county, the sale may have been at a. fair price. In this state of uncertainty the court erred-in confirming the report of the sale.
The court is further of opinion, that the final decree made in these causes on the 17th day of May 1875 is-erroneous, for reasons already stated and for others. Whether the decree rendered in the said causes on the 5th day of September 1878 was a decree by default or-not, the circuit court erred in dismissing the defend-. ant Barger’s motion for relief against that decree,, which was erroneous for reasons before stated, if no-other; and his motion might be regarded as a petition *871 for rehearing, and the relief sought obtained in that way, if it could not be obtained under the Code, chapter 177, section 6, page 1135. The said court also erred in not directing the assignee in bankruptcy of the defendant Barger to be made a defendant in these suits; and in not proceeding to adjudicate upon the question of the right of the said Barger to homestead under the constitution and law of the state of Virginia and the acts of bankruptcy of the United States. That claim had been asserted by him before the court of bankruptcy of the United States; but that court had referred it to the said circuit court in these cases. And the said circuit court erred in not taking cognizance of and adjudicating in regard to the same. But this court does not now express any opinion upon the question in regard to said claim, as it would be premature to do so.
The court i§ therefore of opinion that so much of the decrees appealed from as is in conflict with the principles above declared and opinion above expressed ought to be reversed and annulled, and the residue affirmed, and the cause remanded to the said circuit court, in order that the said assignee in bankruptcy may be made a defendant to the said suits, and that further proceedings may be had therein to a final decree in conformity with the said principles and opinion.
Decree reversed.