PICKETT *v.* FERGUSON.

(*Jackson.* May 19th, 1888.)

1. EVIDENCE. *Parol, to correct written contract. Sufficiency of.*

Parol evidence, when admissible to supply an omission in a written contract, must be clear and satisfactory as to the omitted stipulation. The alleged omission is not proved in this case.

2. LANDLORD AND TENANT. *Tenant's purchase of leased premises, at judicial sale, valid. Constructive trusts.*

Tenant may acquire valid title to the leased premises by purchase thereof at a judicial sale made, during the term of his lease, under proceedings against the landlord to enforce an incumbrance, instituted and known to the tenant before the lease.

The tenant does not, in such case, become in any sense a trustee for the landlord.

Cases cited and approved: Bumpas *v.* Alexander, 10 Heis., 542 ; 13 B. Monroe, 505.

Cited and overruled : *Dictum* in Scott *v.* Levy, 6 Lea, 667.

Pickett *v.* Ferguson.

3. JURISDICTION. *Of Chancery Court over land in another State. Constructive trusts.*

The Court being of opinion that complainant, upon the facts and the law, is entitled to no relief, does not decide the question discussed, as to the jurisdiction of the Chancery Court to enforce a constructive trust against land in another State.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. H. T. ELLETT, Sp. Ch. ·

S. P. WALKER for Complainant.

POSTON & POSTON for Respondents.

B. M. ESTES, Sp. J. This case was heard at the last term by the Court as now constituted, the writer of this opinion sitting, without commission, at the request and by consent of parties, in the place of Judge Folkes, who was incompetent, when a decree was pronounced in favor of the defendants upon the leading questions involved.

Upon a petition of great force and power a rehearing was ordered, and at the present term the case has been re-argued by counsel, who, with much research and learning, have afforded the Court the aid that the importance of the questions involved demanded.

The litigation grew out of a lease of lands

situated in Mississippi County, Ark., for the term
of five years from the 1st day of January, 1878,
made by the complainant to the Defendants Fer-
guson and Hampson. At the date of the lease
there was a suit pending in the Supreme Court
of Arkansas, on appeal from the Circuit Court of
Mississippi County, in which the land thus leased
was sought to be subjected to the payment of
large incumbrances thereon. The lessees were
fully aware of the pendency of this suit. They
took the lease, went into possession, and were
thus in possession when a decree for the sale of
the land, to satisfy the incumbrances, was rendered
by the Supreme Court of Arkansas, and when it
was sold under the decree, on the 28th of Febru-
ary, 1879. At this sale the Defendant Hanauer,
became the purchaser, but both the Chancellor and
Commission of Referees have found the fact to
be that the purchase was for the benefit of Fer-
guson and Hampson, and, in fact, their purchase.

In this conclusion we think they were justified
by the evidence. After the purchase under the
decree, Hanauer conveyed the land to Ferguson
and Hampson, and they remained in possession as
before; and were thus in possession when this
bill was filed in the Chancery Court of Shelby
County, on the 18th day of February, 1881, claim-
ing that under the facts alleged, and especially by
reason of the fiduciary relation of landlord and
tenant subsisting between the complainant and the
Defendants Ferguson and Hampson at the date of

their purchase of the land, the complainant was the equitable owner thereof, and that the said defendants held the legal title as trustees for her under the equitable doctrine of constructive trusts.

The complainant sought by the. bill to establish the trust, to redeem the land, and prayed that the defendants be required to convey it to her. Process was duly served upon the Defendants Hanauer and Hampson, but no service was ever had on Defendant Ferguson, and he has never entered an appearance. After the fact of his non-residence, or of his being beyond the reach of the process of the Court, was developed, publication to him as a non-resident was duly made, and an order *pro confesso* taken against him. He has steadfastly held himself aloof from the case, and one of the chief contentions in argument has been whether a valid decree could be pronounced against him based upon this publication and order *pro confesso*.

At the threshold the Defendants Hanauer and Hampson filed a plea to the jurisdiction of the Court, alleging the ground that the subject-matter of the litigation was land situated in another State; and also that Ferguson was not before the Court under the publication to him. The Chancellor held the plea insufficient, and overruled it.

The supplemental bill afterward filed, and the proceedings thereon, need not be considered, inasmuch as it was dismissed by the complainant herself. Subsequently, on bill, answer, and voluminous evidence, the case was heard before Special Chancel-

lor Ellett, who pronounced an able and learned opinion, in which he held that, by reason of the fiduciary relation of landlord and tenant existing between complainant and Ferguson and Hampson, the conduct of the latter in purchasing the land at the judicial sale made them trustees under a constructive trust, and that complainant was entitled to redeem the land.

After the hearing by the Chancellor, but before the decree was pronounced, the complainant filed her bill in the Circuit Court of Mississippi County, Arkansas, in which she repeated in substance the statements and allegations of her bill in this case, and prayed that, "in the event of a failure of jurisdiction in the Tennessee Court, in whole or in part, she might, to that extent, be allowed to prosecute this bill as an independent, original bill, upon the facts and equities therein averred; but if the jurisdiction of the Tennessee Court should be sustained, and the cause determined in that Court upon its merits and in complainant's favor, this bill might be treated as auxiliary to that, and that complainant might be permitted, upon supplemental proceedings, to enforce such decree as she might thus obtain."

To this bill, in the Arkansas Court, all the defendants, including Ferguson, promptly filed an answer and cross-bill. In their cross-bill they set up their title to the land, claiming that the Tennessee Court had no jurisdiction of the case; asked that Mrs. Pickett's claim of title be removed as a

cloud on their title, and that she and her solicitors be enjoined from prosecuting her suit in Tennessee.

In obedience to the prayer of the cross-bill an injunction was granted against the complainant and her solicitors, and its purport made known to them in Tennessee. Notwithstanding this injunction, the complainant, by her solicitors, prepared and caused to be entered the decree which the Chancellor had ordered in her favor, and subsequently obtained from the Chancellor an injunction against the defendants and their solicitors, prohibiting them from the further prosecution of their suit in Arkansas.

In disobedience of this writ, the defendants still prosecuted their cross-bill in the courts of Arkansas, and the record in this case embraces contempt proceedings against them for breach of the injunction. The complainant and her counsel were duly adjudged guilty of contempt by the Circuit Court of Mississippi County, Arkansas, and, as a penalty for their contumacy, that Court ordered that, unless the complainant purged herself of the contempt, by setting aside the decree entered in her favor in the Tennessee Court, she would not be allowed to prosecute her bill in that Court.

The complainant, refusing to comply with the order of the Court, made sundry ineffectual efforts to plead to and defend the cross-bill. The defendants filed all the evidence taken on both sides in the Chancery Court of Shelby County; and on this they went to trial.

The Court, still refusing to hear the complainant in the suit, pronounced a decree dismissing her bill for want of equity, and perpetuating the temporary injunction granted on the cross - bill. The case was carried to the Supreme Court of Arkansas, and there Mrs. Pickett appeared by her counsel, and the case was fully argued on both sides.    That Court, in 1885, affirmed the decree of the lower Court, and, in an opinion reported in the forty-fifth volume of Arkansas Reports, held that the relation of landlord and tenant between Mrs. Pickett and Ferguson and Hampson did not forbid the purchase of the land by the latter, that there was no constructive trust, and that Mrs. Pickett was not the equitable owner of the land. The record of that suit is a part of the record here, and the report of the opinion of the Supreme Court of Arkansas has been produced on the argument of the case.

It will thus be seen that the Circuit and Supreme Courts of Arkansas have, upon a record substantially the same as this, reached a conclusion upon the merits of the controversy in direct antithesis to that reached by the Chancellor; and that while the complainant's right to the Arkansas land is established by a decree of the Chancery Court of Tennessee, entered by her counsel in disobedience of the injunction in the Arkansas Court, the defendants are in possession of the land, with a decree of the Supreme Court of Arkansas establishing their title, but rendered at their instance

in violation of the injunction of the Tennessee Court.

The decree of this Court at the last term was based exclusively upon the ground that the courts of Tennessee could not, under the authorities, entertain jurisdiction of the case, by reason of the fact that the subject-matter of the litigation was land situated in another State. The principles of the decision, very briefly stated, were these: The Court left out of view, as the Chancellor did, the claim that the Defendants Ferguson and Hampson were guilty of actual fraud in refusing to give their notes in advance for the annual rents of the land, for the reason that it was not satisfied from the evidence that the claim was well founded, or that the fraud, if any was in fact practiced, was effective to produce the alleged injury to the complainant. There being, in the opinion of the Court, no actual effective fraud, the case was treated like the Chancellor treated it, as one involving a constructive trust, predicated alone on the supposed fiduciary relation of landlord and tenant, which, under the doctrine of some of the authorities, forbade the purchase of the leased land by the tenant while the relation existed. The Court assumed, without discussion, that, under the Tennessee cases, the tenant could not thus purchase and hold for himself, and proceeded, with this assumption, to decide that the trust imposed in this case was a constructive trust arising from *constructive* fraud only. 1 Perry on Trusts, Sec. 168.

The limitation of the jurisdiction of courts of equity to make decrees respecting land situated in other States or countries than that of the *forum,* to cases of *contract, trust,* and *fraud,* as settled in *Massic* v. *Watts,* 6 Cranch, 148, and uniformly followed by the other courts, was announced, and the doctrine evolved from the authorities that its fundamental principle was an avoidance of the disturbance of the comity which ought to exist between the courts of different nations, by bringing the decisions of foreign tribunals into conflict with those of the *locus rei sitæ;* that the *rationale* of the limitation required that the contract, trust, and fraud intended by the courts in establishing the limitation, should be understood to be an express contract, a direct trust, and actual fraud; that the constructive trust arising from *actual* fraud should be classed under the head of *"fraud"* in the statement of the limitation; that because the legal and equitable principles governing express contracts, direct trusts, and actual fraud were substantially the same—to use the expression of Lord Hardwick— "in every place," there was but little danger in such cases of disturbing the comity between the courts of different countries by making a decree touching land in a foreign country; that the liabilities in such cases of contract, trust, and fraud were for the most part "purely personal," and therefore within another principle of the doctrine of the jurisdiction; but that cases of constructive trust arising from mere *constructive* fraud, and in-

volving doubtful and disputed equities, that were not generally accepted by the courts of all States and countries, were not within the jurisdiction; for in such cases the danger existed of violating the fundamental principle of the doctrine, by the risk of disturbing the comity between the courts of different countries, in bringing the decisions of foreign tribunals into conflict with those of the *locus rei sitæ;* and, finally, it was said that because the Supreme Court of Arkansas had in this very case held that a constructive trust did not arise from the relation of landlord and tenant, the exercise of the jurisdiction here, upon the theory that it did, would make a signal case of the disturbance of the comity that ought to exist between the courts of sister States, and in effect operate to impress upon the lands of Arkansas "a metaphorical trust," arising under the notion or doctrine of the Tennessee courts in direct antagonism to the doctrine of the courts of the *locus rei sitæ.*

It was shown that in *Massie* v. *Watts* the fraud was *actual,* although not so expressly characterized, and that "perhaps in no well-considered case has the jurisdiction been extended to rights founded on doubtful equities, or mere constructive fraud, or upon legal principles that are not recognized and enforced generally by the jurisprudence of enlightened nations."

The authorities cited were: *Penn* v. *Lord Baltimore,* 1 Ves., 144; *Angus* v. *Angus,* West's

Rep., 23; *Lord Cranstoun* v. *Johnson*, 3 Ves., 170; *Massie* v. *Watts*, 6 Cranch, 148; *Gardner* v. *Ogden*, 22 N. Y., 327; *Pickett* v. *Ferguson*, 45 Ark., 178; Leading Cases in Eq., Vol. II., Pt. 2, p. 1832, etc.; Wharton's Conflict of Laws (Ed. 1880), Sec. 288; *Miller* v. *Birdsong*, 7 Bax., 531, 537, etc.; Pomeroy's Eq. Jurisprudence, Sec. 1044, etc.

Upon the reconsideration of the case now, the Court has concluded that its decision ought to be placed on another ground which is fundamental; and it follows that the opinion of the last term is not to be regarded as a precedent. This ground will be presently stated.

The petition and argument for the complainant earnestly insist that the Court was in error in concluding, on the former hearing, that the charge of actual fraud against the Defendants Ferguson and Hampson in promising, and then refusing, to give their notes for the five years' rent was not sustained by the evidence. We have again carefully examined and considered the evidence on this point, and find ourselves unable to agree with the contention of the learned counsel. The charge is substantially that these defendants, as lessees, by the terms of the contract of lease, agreed to give their notes for the five years' rent to the complainant, and fraudulently refused to do so, whereby the complainant was unable to raise the money with which to pay off the incumbrance on the property, and prevent the sale under the decree of

the Arkansas Court. It appears from the evidence, and the result showed, that complainant had no other adequate resource from which to raise this money, and thereby prevent the sale. She claims that her main object in making the lease was to secure the notes of the lessees, with which to raise this money. The written lease, as executed in duplicate, contains no such promise on the part of the lessees to give notes, but an original covenant to pay. the rents in annual installments.

Waiving the question of the competency of parol evidence to enlarge or add to the written contract this important promise, it is clear that, in the face of the denials of the answer and the omission of the promise from the writing, the complainant was required to make full and satisfactory proof that the promise was in fact made. Without entering upon a discussion of the question of fact, we think the complainant has wholly failed to do this. In the first place, the weight of the direct testimony on this point is against her, and the undisputed circumstances of the case abundantly negative the contention. Some of these circumstances are the following:

*First*—The claim is that the main inducement of the contract of lease was to enable the complainant to get the notes, and yet she and her husband formally executed the contract without this feature in it.

*Second*—She claims that it was omitted in order

that the land might be surveyed, and yet it was surveyed a short time thereafter, and she did not then demand the notes.

. *Third*—The lease was made in November, and yet on the first of the succeeding January she surrendered the possession of the land to the lessees according to the terms of the lease without demanding the notes.

*Fourth*—The Defendants Ferguson and Hampson were shrewd business men, who knew that the land leased was subject to an incumbrance under a decree of Court which might defeat the lessor's title within a short time after the transaction, and it is not at all probable that they, in disregard of the danger incurred, agreed to give their negotiable notes for five years' rent in advance, amounting to about $17,000.

*Fifth*—It is shown that understandingly and purposely anything like a covenant for quiet enjoyment was omitted from the contract, under the impression that an express covenant was necessary to bind the lessor to keep the tenant in possession during the term. It would seem to be extremely improbable that the lessees, if otherwise inclined to give the notes for the five years' rent in advance, would agree to do so, and at the same time release the lessor from the legal obligation to keep them in possession during the entire term.

Without enlarging this discussion, our conclusion is again that the complainant has not only failed to establish this verbal contract on the part

of the lessees to give rent notes, but that it is disproved. If the contract to give the rent notes is disproved, there could be no fraudulent refusal to give them, and no fraud effective to produce the failure of the complainant to pay off the incumbrances. It might be conceded that the conduct of these defendants in other respects mentioned in the petition was subject to criticism and censure, and yet it is quite clear that the essential elements to constitute the effective fraud charged in the bill is not established.

The only remaining question is whether the ground upon which the Chancellor based his decree is sustainable and justifies a decree for the complainant. He held that the relation of landlord and tenant creates such influences of trust and confidence that courts of equity will construe a trust to arise out of a purchase by the tenant of the leased property at judicial sale for the satisfaction of an incumbrance thereon. This is a vexed and disputed question, as shown by the arguments and briefs of counsel. While Judge Story and Mr. Perry, in their discussion of this doctrine, mention landlord and tenant in their enumeration of the fiduciary relations from which the trust may be construed, neither Mr. Pomeroy, Mr. Sugden, nor White and Tudor in their notes do. 2 Pomeroy Eq. Juris., Sec. 958–963; 2 Sugden on Vendors, p. 362, etc.; Leading Cases in Eq., Vol. I., Part I., p. 237, etc.

But this Court is saved the labor of a full dis-

cussion of this question by reason of the fact that it has been authoritatively settled in the case of *Bumpass* v. *Alexander*, 10 Heis., 542; and we feel that we are bound to follow that precedent, even if we doubted the soundness of the doctrine there announced, which we do not. We understand the opinion in that case on its facts to be decisive of this, and to settle the doctrine in Tennessee that courts of equity will not ordinarily construe a trust to arise from the purchase by the tenant at a trust or judicial sale of the property held under the tenancy. We are satisfied with this doctrine, and are content to adhere to it. The statement of the Judge who delivered the opinion in *Scott* v. *Levy*, 6 Lea, 667, we regard as a *dictum*, and not a decision overruling the case of *Bumpass* v. *Alexander*. See *Casey* v. *Gregory*, 13 B. Monroe (Ky.), 505.

From all this it results that the decree here should be for the defendants, both on the question of jurisdiction (for if there is not even a constructive trust arising from the fiduciary relation, the courts of Tennessee can have no conceivable ground of jurisdiction of this case affecting land in Arkansas) and on the merits.

The petition for rehearing must be dismissed, and the decree entered at the last term, including the judgment for the complainant as shown, enforced. The report of the Referees is set aside.

It may be proper to remodel in some respects the decree as entered at the last term, so as to make it conform in full to the principles of this opinion.