Granger, C. J.
Watts’s representatives urge that the district court erred in overruling their motion to dismiss the Gregg appeal. Under the statute authorizing the action the fund stood in place of the land. As the church was in possession adverse to the claims made under Gregg and Watts, neither set of those claimants eould maintain any action at law to determine which of the two had the better right. The church might have called both sets into court to quiet its own title. In such case, neither of them could of right demand a trial by jury. This action grows out of a proceeding, by which the railway company sought to take the place of the church, as actual possessor of the land, and at the same time to make sure that the purchase money *630 should go to the real owner, so that its title might remain undisturbed. Although Robert Gregg’s heirs filed the petition in the common pleas, we think the action should, as between them and the representatives of Watts, be treated as if these rival claimants were in court at the instance of the church, under a bill of peace. Hence, it seems to us that the motion to dismiss the appeal was properly overruled. The proceeding for appropriation was under the Act of April 23, 1872, (69 Ohio Laws, 88), but as!sections 18, 19, and 20 of that Act are substantially the same as sections 6442, 6443, and 6444 of the Revised Statutes, we refer to the latter. They do not grant any right to a trial by jury. They only preserve existing rights as to mode of trial. Their appeal being sustained, the next question is as to the validity of their claim.
The supreme courts of the United States and of Ohio, have concurred in holding that a legal entry, properly completed, appropriates the land covered by its terms; that a survey of land not within those terms is void; that until after patent issued the doctrine of notice does not apply; that prior to the patent no legal rights except that of the United States can be obtained; that the equities are to be governed by recognized equitable rules; that when the patent is issued, the grantee takes the legal title in trust for him who has the controlling equity. The Ohio decisions on these points have been collated in Swan & Critchfield’s Statutes, p. 555, and in the Ohio Digest. See also Massie v. Watts, 6 Cranch, 148, and Kerr v. Watts, 6 Wheaton, 550. Counsel before us have cited freely. We will not quote. We are satisfied that Nathaniel Massie, while employed to complete an entry and survey for a distant principal, made a void survey for him and attempted to appropriate the O’Neal land for himself; that he was properly charged as taking that land in trust for Watts; that Watts’s equity was prior in time to that of Robert Gregg, and superior thereto in degree, because the entry record was accessible to him, and Watts was not guilty of laches, and that Massie’s heirs took the patent in trust for Watts. *631 Therefore we think the finding that the Gregg claim is invalid was right.
This brings us to the issues between the church and the claimants under Watts. The record satisfies us, clearly and without a doubt, that John Watts intended to convey the full title to lot 86 to the church. But we are urged to hold that the district court erred in sustaining the equity of the church because it was a mere donee, and that too for a use not a charitable public use. Although many cases are cited none of them are so similar to this one as to require us to reverse the decree of the trial court.
The deed before us is a perfect deed. Under Hall's Lessee v. Ashby, 9 Ohio., 96, it passed the legal title to lot 81. If the church had sought to possess that lot, could Watts have defended his own possession? Or if they had entered, could he have ousted them without asking equity to use its power on his behalf? ' In such a ease would equity have granted him relief from the effect of his own mistake, without requiring him to correct that mistake ?
If the mistake had been discovered in his lifetime, probably it would have been corrected by an exchange of deeds between him and the church. Although it was not discovered, the parties by their conduct effected a correction. Although its deed was on record, the church’s action allowed the Watts estate to convert to its own use the more valuable lot of the two, while Watts and his devisee and executor never made claim to any interest in lot 86. Although it is perhaps true that neither of them could have ejected the church, because they had permitted burials to continue after the decree of 1821, the fact that they made no claim of any kind is not without weight under the peculiar circumstances of the case.
We think that although the church lost, by the passage of years, all right to claim lot 81, there was a time when it might have used the deed to Watts’s prejudice. Believing that its deed gave it lot 86, it remained quiet; and because of that belief, justified by Watts’s conduct, its position was materially altered long before 1877.
*632 Moreover, the value of lot 86, in 1823, was not greater than one dollar. Watts’s hand and seal tell us that he conveyed the lot in consideration of that sum, and that he received it. No witness has said that he did not receive it. The deed itself refers to no other consideration. While evidence was admissible to show that the money was not paid? an equity court ought not to presume that the one dollar was nominal or that it was not paid, merely to give to the representatives of John Watts a lot which their ancestor intended to convey in fee simple to the church, and died believing that he had so done.
If Watts had made no deed his quiescence would only have effected a dedication for a graveyard, and on the termination of the use his representatives would have a clear right to the lot. But having made a deed which he intended should convey the entire title, and which he supposed had so done, his conduct is properly referable to the deed. Taken with the deed his conduct was a confirmation of the conveyance of lot 86. Those representing him must be held by a like construction, at least up to a disavowal. For more than half a century, on the side of the grantor, as well as on that of the grantee, the deed of 1823, has been treated as a complete conveyance of lot 86. We cannot think the trial court erred in giving effect to the conveyance so made. The cases in which equity has refused to correct mistakes differ, as it seems to us, widely and materially from the one at bar. A complete conveyance of one lot, with actual possession of the other by the grantee for more than half a century, under the deed as understood by the parties, presents a case swi generis. We are unwilling to' make a precedent denying the grantee’s equity in such a case.
A number of other questions were incidentally made. A brief reference will be made to some of them.
The Robert Gregg heirs urge that the church is estopped to deny their title, because it accepted Nathan’s deed. It is well settled that the grantee in a deed that purports to convey the entire title is free to buy in, or accept, and to assert any other title. Nathan Gregg’s deed left in him a *633 reversion assertable whenever the specified use terminated. Perhaps the church could not use its possession taken under his deed, to the prejudice of such reversion. But, in this tripartite contest, the Watts title defeats that of Gregg without any aid from the church. The Greggs cannot rightfully complain because the church so uses the Watts deed as to transfer the victory to itself.
The Watts heirs urge that the church did not act, or claim, or hold, under the deed of their ancestor, because, at some of the meetings of its trustees, those present seemed ignorant of the Watts deed, and spoke, or resolved, as if they only knew of and relied on that of Nathan Gregg. It is well known that corporation officers frequently change. It is natural, therefore, that after the passage of years incoming officers should be ignorant of many facts in the history of the corporation. The incidents put in evidence established only that, when the Watts deed was almost 50 years old, officials learning from the early minutes of the corporation that the lot was conveyed' to the church in 1810, did not look farther, but supposed that the deed of that year constituted the church’s title. The acceptance of the Watts deed, and its prompt presentation for record, sufficiently prove that from its delivery'-, the church held under it, as grantor and grantee supposed it to be.
The Watts heirs objected to the admission in evidence of the deed, made by Watts and by his executor and devisee, after November, 1823, conveying lots adjacent to or in the vicinity of lot 86. The conveyance of lot 81 to Shepherd was a part of the conduct of the parties touching the two lots in question. As such it was admissible and valuable. As to the others, their presence in the .record did not and could not do any harm to the Watts claim, even if they ought not to have been admitted. If that admission was error it was error absque injuria. A majority of the court affirms the judgment complained of.

Judgment affirmed.

Mastín and Macattley, JJ. dissent.