KING *v.* PILLOW.

(*Jackson.* May 30, 1891.)

1. CHANCERY COURT. *Jurisdiction to supply deed for lands outside the State.*

Chancery Court, having acquired jurisdiction over the defendant by due service of process, may, by proper decree, supply lost deed for lands lying outside the State, upon suit of the vendee against his vendor, averring that the latter had obtained possession of the deed after its delivery and fraudulently destroyed it.

Case cited and approved: 6 Cranch, 148.

2. SAME. *Will not supply lost deed based upon immoral consideration.*

But Chancery Court will not supply lost deed to lands upon suit of vendee against his vendor in any case where the deed was based upon an illegal consideration—*e. g.*, that the vendor, a married man, should obtain divorce and marry the vendee, a widow.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

W. G. WEATHERFORD and T. W. BROWN for King.

POSTON & POSTON and T. P. CHAMBERS for Pillow.

TURNEY, Ch. J. In a proceeding in the Chancery Court at Memphis between these parties Mrs.

Pillow filed a cross-bill to set up a deed made to her to a tract of land in Lee County, Arkansas, which she alleges was, after its execution and delivery, destroyed by King.

Objection was taken to the jurisdiction of the Court to make decrees affecting title to lands in another State. After full proof, the Chancellor at the hearing dismissed the cross-bill, upon the ground that he was without jurisdiction. In this we think he erred.

In *Massie* v. *Watts*, 6 Cranch, 148, Chief Justice Marshall states the rule: "The Court is of opinion that, in cases of fraud, of trust, and of contract, the jurisdiction of a Court of Chancery is sustainable wherever the person is found, although lands not within the jurisdiction of the Court may be affected by the decree."

Other authors say: "Rights growing out of trust or contract, or founded upon a fraudulent violation of the principles of equity as between man and man, are purely personal, and will consequently be upheld and enforced both at law and in equity, wherever jurisdiction has been acquired over the parties, without regard to the nature or situation of the property in which the controversy had its origin, and even when the relief sought consists in a decree for the conveyance of land which lies beyond the control of the Court and can only be reached through the exercise of its power over the person."

The charge of the bill is to the effect that

King, after the execution and delivery of the deed, destroyed it—burnt it. The charge makes the act of King a fraud upon the rights of Mrs. Pillow. If he obtained the possession of the deed from Mrs. Pillow or her agent by any means, he held it in trust for her. If he afterward determined to and did destroy it, he was guilty of actual fraud and a breach of a direct trust.

Under such facts, the rights of Mrs. Pillow not only grew out of a trust, but are founded upon a fraudulent violation of the principles of equity; and a Court of Equity having jurisdiction of the person of King will, if the case made by the bill is sustained by the proof, compel him to correct the wrong, carry out his trust, and remove the cloud he has placed upon her title by his fraudulent violation of the principles of equity, even though the relief should be in a decree to supply the conveyance to the tract of land in Arkansas. There can be no substantial reason why a Court of Chancery may not compel one within its jurisdiction to supply deeds as well as any other valuable papers he may have obtained and destroyed in another State with a fraudulent purpose. If, instead of deeds, the papers had been notes, bonds, or other evidences of debt, or bills of sale of personal property or contracts, there would not nor could there be a question of the power and duty of the Court to compel their re-instatement. Then, why not the evidences of the ownership of land? The distinction is altogether too technical,

and does not consist with equity and good conscience.

Upon the facts there is no doubt of the execution of the deed, and the weight of the testimony is that it had been delivered. The proof utterly fails to satisfy us that there was a valuable or good consideration for its execution, although it recites one of ten thousand dollars paid, with some testimony to support it. We think there can be no doubt that the only consideration was a divorce agreed to be obtained by King from his wife, and then a marriage with Mrs. Pillow. We think no impartial mind can dispassionately weigh the testimony and letters of Mrs. Pillow alone and come to any other conclusion, although she attempts to make it appear that she was only countenancing and encouraging King in his illegal and immoral proposals that she might collect moneys loaned him.

Looking to the condition and relations of the parties, uncovered by a record of nearly twelve hundred pages, containing their own depositions and many letters, we are unable to doubt of the consideration—divorce and marriage. For such conduct there is no excuse, mitigation, or apology. Mrs. King being admitted and proven by all concerned to be an amiable, intelligent, and lovable lady, we feel it a duty to refrain from detailing the facts of this remarkable record.

The decree dismissing the bill is affirmed.