THOMAS J. SUTTON ET AL. v. GEORGE F. ARCHER.

[46 South. ·705.]

1. STATES. *Boundaries. Mississippi river. Water and water courses. Accretions. Islands.*

Where islands originally in Mississippi were gradually washed away by change in the channel of the Mississippi river and deposited upon a projection of the Arkansas shore, the· land became a part of that state and the courts of Mississippi have no jurisdiction over it.

2. COURTS. *Jurisdiction. Land in another state.*

A Mississippi court has no jurisdiction of the subject matter of a. suit involving a contested title to land situate in another state where the parties are contending at arm's length, and there is no question of specific performance. of contract, enforcement of trust, or the doing of any act which, from previous dealings, is binding on the conscience of the parties, although the court may have jurisdiction of the persons of the parties.

FROM the chancery court of Washington county.
HON. PERCY BELL, Chancellor.

Sutton and others, appellants, were complainants in the court below; Archer and others, appellees, were defendants there. From a decree in defendants' favor complainants appealed to the supreme court.

Complainants' suit was for confirmation of their alleged title, and cancellation of defendants' claims, to land described as being in township 18, range 8, west, in Washington county, this state, and embracing what were originally Towhead island and Island No. 83, in the Mississippi River. The complainants showed proper deraignment of title from the United States government. The two islands formerly lay in the Mississippi River near the Mississippi side of the main channel and had been formerly recognized by the United States government as being in Washington county, this state. These islands were very gradually washed away and the course of the river gradually shifted from the Arkansas side, these changes being accompanied by a slow accretion of land on to the Arkansas side of the river, until the place where these islands had been became a part of the Arkansas bank of the river. The defendants, whose grantors were owners of the land in Arkansas from which the river had gradually receded and to which the accretion has gradually added area, proved that the site of the two islands had, by accretion and the changes of the river, become a part of their property on the Arkansas side of the stream, and contended that the land in question had, for more than ten years before institution of the suit, been on the Arkansas side, and that, through such period of time they had occupied it adversely to the complainants. Defendants further contended that, whether the land be in Mississippi or Arkansas, the complainants were precluded from exercising legal claim thereto because of the statute of limitation, the period of limitation, under the Arkansas statute, being seven years, and, under the Mississippi statute, ten years. Defendants also insisted that, inasmuch as the land had become a part of the state of Arkansas before the suit was instituted, the Mississippi courts could not entertain jurisdiction

A very large amount of evidence was adduced on these issues. The decree of the court below dismissing the bill does not state upon what ground the decree was reached.

*Paxton & Walson,* and *Hugh C. Walson,* for appellants.

Are the lands in Arkansas or in Mississippi? Mississippi's boundaries, when the state was admitted into the union in 1817, were fixed on the west at the Mississippi river. Hutchinson's Code, 59. This meant the main channel or middle of the river. Code 1857, pp. 47, 48; 2 Am. & Eng. Ency. of Law (2d ed.), 504; *Morgan v. Reading,* 3 Smed. & M., 366. In 1817 and thence down to the date of complainants' purchase and occupation and for many years afterward the main channel of the Mississippi river was west of Towhead island and therefore much west of Island No. 83. See U. S. War Dept. maps, 1818, 1820, 1831, 1848. The land were surveyed, located and claimed by Mississippi from the date of the state's organization and regularly listed on the state's assessment rolls and taxed as Mississippi property.

The state of Arkansas was organized in 1836, and its boundaries on the east fixed at the Mississippi river, at that time west of the lands in controversy. See Nav. maps 1822, 1831, 1848. The state of Arkansas has never, throughout eighty-eight years, laid any claim to the lands until after this suit was instituted; when, about two years ago, according to the testimony of appellee, Archer, they were surveyed by some authority in Chicot county, Arkansas; and, since such time, Archer has paid taxes in Arkansas.

Hence, the lands are yet Mississippi territory. It has not been shown by any satisfactory proof that Towhead island was ever entirely washed away. Several veracious witnesses testified that in one year, 1876, the river suddenly turned its current east of Towhead island and citizens of Greenville went out in boats and attempted with dynamite to reopen the channel of the river between Towhead and the Arkansas side. Lamar

Fontaine, a truthful and experienced civil engineer of varied experience, testified that in 1849 Towhead island was a mile and a quarter east from Point Chicot, Arkansas, and that he remembers its location well.

Now, if Towhead island never washed away and the river changed its bed from the west to the east around it, there was no change of boundary or title. *Missouri v. Kentucky,* 11 Wall. (U. S.), 226; *Indiana v. Kentucky,* 136 U. S. 479; *Virginia v. Kentucky,* 11 Wall. (U. S.), 395; *McGuire v. McFerrin,* (U. S. S. C.) 51 L. Ed. 218.

But if we concede that the two islands were entirely washed away, it is manifest that neither the title nor the boundary was disturbed. It was undisputably proved that the land was reformed in the old boundaries, which boundaries can now be definitely located, first as islands disconnected from either shore, and, then, that gradually these islands were enlarged, sloping toward Arkansas until finally at their northern and southern extremities they became joined to the mainland, although even now the old line of the channel can easily be seen. The ultimate joining of the islands to the mainland did not give the proprietor of the mainland any right to the islands, or, what had formerly been islands, because, for the same reason, the owner of the former islands might as well have laid claim to the mainland.

To entitle the riparian owner to the land, the water must begin to recede from his land. It is not sufficient if the water begins to recede at some other point and finally recedes from his land. Farnham on Waters, vol. 1, p. 322; *Perkins v. Adams,* 132 Mo. 131, 33 S. W. 778.

The title of the shore owner is not established where it appears that as the waters receded they at first left islands separated from the land of the shore owner and from each other by swales or depressions in which the water remained for some time before the whole tract became dry. *Hammond v. Sheppard,* 186 Ill. 235,, 78 Am. St. Rep. 274; *St. Louis v. Rutz,*

138 U. S. 226; *Sweetman v. Holbrook,* 18 Ky. (Law), 870; *York v. Rolls,* Ont. App. Rep. 72.

We do not understand opposing counsel to claim that the ac-·cretions were to appellees' lands, but they do claim that the accretions were to the Arkansas bank below high water mark, and that accordingly the state of Arkansas got title to the lands in ·dispute and that the title now rests in Arkansas. Our answer to this is merely to refer to Kirby's Digest of Arkansas Statutes, p. 1056, § 4918, reading as follows: "All land which has ·formed or may hereafter form in the navigable waters of this state, and within the original boundaries of a former owner of land upon such stream, shall belong to and the title shall vest in, such former owner, his heirs or assigns or whosoever shall lawfully succeed to the right of such former owner therein." Hence, under appellees' own contention, the title to the lands in ·dispute belongs to appellants.

Are the complainants, appellants here, barred by statute of limitation? There was no actual possession or occupation of any of the lands sued for by appellees' vendors. Appellees did not ·occupy the same until April; 1897. This suit was instituted in May, 1904, and the answer denied possession. If the lands are in Arkansas, and appellees' contention about accretions is correct, then until April, 1901, the title was in the state of Arkansas and the statute of limitation did not run either in favor ·of appellants or appellees.

Should the court below have granted relief to appellants as complainants, even though holding that the lands were in Arkansas? It must be remembered that all of the parties to the suit were in Mississippi and within the jurisdiction of the court, and that the bill prayed for special and general relief. · It is a fundamental maxim that equity acts *in personam.* Indeed, this was the original field of jurisdiction of courts of equity. Story Eq. Vol. 1, § 44; Bispham Eq. (2d ed.), § 47; 2 Kent Comm. 463; *Penn v. Lord Baltimore,* 2 Lead Cas. Eq. :767; *Nabob of Arcot v. East Ind. Co.* 3 Bro. Ch. 325; *Earl of*

*Kildare v. Eustace,* 1 Vern. 419; *Parham v. Randolph,* 4 H. (Miss.), 455.

This jurisdiction has been recognized and approved by the Arkansas courts. *Pillow v. King,* 55 Ark. 633.

*Wynn & Wasson,* for appellees.

The appellants must recover upon the strength of their own title, whether the appellees have title or not. *Hart v. Bloomfield,* 66 Miss. 100, 5 South. 620.

Appellants denied in their answer that Towhead island was ever in the state of Mississippi, or rather ever belonged to the state of Mississippi under the swamp land grant. It appears that in 1830 only one island, namely Island No. 83, existed in the stream of the river, and that at that time Point Chicot, on the Arkansas side, extended in a tongue-like shape nearly out to this island; and it appears that in time the restless river cut through the point of land, and thus made Towhead island. This is the explanation given by Lamar Fontaine, one of the appellees' witnesses. And if this be true, as we do not doubt, the state of Arkansas never lost title to Towhead island.

The appellants claim that the doctrine of accretion does not apply because, as they say, the caving was rapid, and, while they admit that Island No. 83 caved entirely away, they say that Towhead island did not entirely cave away, and that, notwithstanding all the land in dispute is on the Arkansas side at present, they should have the right to sue therefor in Mississippi. But the facts do not present a case of avulsion. Avulsion is the sudden carrying away of land from one side of a stream and transportation thereof to the other side. 3 Farnham on Waters, § 845. Accretion is the formation of land by process of deposits gradually made by water standing on it. It matters not how fast the caving is on the one side, if the land is formed gradually so as to be observed from time to time in its slow growth, the doctrine of accretion will apply.

Neither the ancestor of appellants nor appellants themselves

could own any of the land west of the main channel of the river by virtue of the ownership of the islands in the stream. They could only own the bed to the middle of the stream, provided that Towhead island was east of the main channel. The boundary between Arkansas and Mississippi has always been the middle of the main channel of the stream, and as that channel shifted, likewise the boundary shifted, except in case of cut-off. *Missouri v. Kentucky*, 11 Wall. (U. S.), 401; *St. Louis v. Rutz*, 138 U. S. 249; *New Orleans v. United States*, 10 Peters, 662; *Nebraska v. Iowa*, 143 U. S. 360.

Appellants claim that they are entitled to recover the land if land formed in the Mississippi river, on the west side of the main channel and by accretion extended down and covered the original site of Towhead. This contention is unsound. For if Towhead was washed away and land was re-formed or deposited at another point on the Arkansas side and gradually extended over the site of Towhead, such land, so re-formed, was in the state of Arkansas and belonged to the state of Arkansas; because, under the laws of Arkansas, that state owns the bed of the river from the western bank to the middle of the stream. *St. Louis, etc., R. Co. v. Ramsey*, 8 L. R. A. 559. But appellants claim that, by the Arkansas Statute, Kirby's Dig. § 4918, the title of the state of Arkansas has been vested in them. This statute has no application. It can only apply to land formed upon the site, or within the original boundaries, of a former owner along and upon navigable rivers. See Arkansas Laws 1901, p. 197.

In answer to appellants' contention that, even if the lands are in Arkansas, the courts of Mississippi will entertain jurisdiction because of the presence of the parties in court, we say that our chancery courts will never undertake to adjudicate conflicting titles to land in a foreign jurisdiction. The jurisdiction of the person, in a case like this, can carry with it the power to exercise jurisdiction only in case of fraud or trust or contract. *Harris v. Pullman*, 84 Ill. 20, 25 Am. St. Rep. 415; 16 Cyc.

119; Bispham Eq. § 47; *Northern, etc., Railroad Co. v. Michigan, etc., Railroad Co.,* 15 How. (U. S.), 240. Our own statute law, Code 1906, § 561, formerly Code 1892, § 510, provides that suits to confirm title to real estate and suits to cancel clouds on title shall be brought only in the county where the land, or some part thereof, is situated.

The appellees, and their vendors, have been in adverse possession of the land on the Arkansas side for more than a generation, and have constantly, during that time, been in possession of the accretions to the property. If the land is in Arkansas, appellants are barred by the statute of limitation, Dig. Stat. Arkansas, § 4815. If the land is in Mississippi, the ten years statute, Code 1906, § 3090, is applicable.

CAMPBELL & CASHIN, on the same side.

In Arkansas, the land of a riparian owner along a navigable river extends only to the highwater mark, and all land lying between that mark and the thread of the stream belongs to Arkansas. *St. Louis, etc., Railroad Co. v. Ramsey,* 8 L. R. A. 559; *Wallace v. Driver,* 31 L. R. A. 317. In the state of Mississippi, the land of a riparian owner extends to the thread of the river. *Morgan v. Reading,* 3 Smed. & M. 366.

Some confusion has arisen from the application by some courts of the doctrine of accretion in cases which involved only a question of boundary. If the rule in Arkansas were the same as in Mississippi with regard to the boundary of riparian lands on the Mississippi river, then the land in controversy, if deposited by the slow process of accretion, would belong to appellees whether the same be considered as accretions or not, because the same would fall within appellees' boundaries. But since the rule in Arkansas limits the boundary of appellees' property to high water mark, the land in question must be accretions to their land in order to vest them with the title thereto; and to constitute accretions to their land the rule, in Arkansas, is that the formation of the land must have begun at highwater

mark, the riparian boundary and have extended outwardly therefrom toward the water's edge. The evidence shows that the islands in question caved away and the land, disintegrating, slowly accumulated on the western shore as the result of accretion and not of avulsion.

Appellants sought to show that the caving on the Mississippi shore was rapid and visible, and some witnesses did so testify; but it was nowhere made to appear that the increase of land on the Arkansas side was rapid and visible. On the contrary, the weight of evidence showed that the increase of land on the Arkansas shore, while extensive in area, was slow and gradual in formation, covering a very long period of time. The idea that the rapid and visible caving off of the bank on one side of the river indicates a rapid and visible formation of land on the other side, is negatived by the case of *Nebraska v. Iowa,* 143 U. S. 359. See also *Denny v. Collon,* 27 S. W. 122; and *Quinlin v. Brantley,* 80 N. W. 405.

As the lands in question were, at the time of suit, in Arkansas, the Mississippi courts had no jurisdiction. *Iowa v. Illinois,* 147 U. S. 1. While equity acts *in personam,* and while the parties defendant were within the jurisdiction of the court, any decree rendered in reference to the lands could have no extra territorial force, and could not affect the ownership under the laws of Arkansas. Where land is situated in one state, and the title thereto is involved in the chancery court of another state having jurisdiction of the parties, the court will exercise its jurisdiction only in case of some contractual or trust relationship existing between the plaintiff and the defendant with respect to such land or in case of *mala fides* practiced by the defendant upon the plaintiff. *Massie v. Watts,* 6 Cranch. 148; *Lindley v. O'Reilly,* 7 Am. St. Rep. 802; *Smith v. Davis,* 90 Cal. 25; *Johnson v. Gibson,* 116 Ill. 302; *Davis v. Morris,* 76 Va. 21; 5 Pomeroy Eq. Juris. §§ 16, 17.

The state of Arkansas will provide ample remedy to appellants in its courts, if they have equitable rights against appel-

lees with reference to the lands in controversy. Dig. Arkansas Stat. 1904, chap. 131.

Under either the statutes of limitation of Arkansas or of Mississippi, appellees own the lands as against appellants. "Possession of lands to which accretions are added, under claim of title, is possession of the accretions; and adverse possession of the main land for the time required by statute also gives title to the accretions, regardless of the question of how recently such accretions were formed." *Bellefontain Imp. Co. v. Neidringhaus,* 181 Ill. 426, 72 Am. St. Rep. 269.

The case was submitted to the court below on facts in evidence, and upon such facts the court decreed for appellees. Hence, this court will not disturb the decree. *Partee v. Bedford,* 51 Miss. 84

Argued orally by *H. C. Watson* and *A. G. Paxton,* for appellant and by *R. B. Campbell,* for appellee.

CALHOON, J., delivered the opinion of the court.

If the decree final below was based by the learned court on the statute of limitations, on the evidence we are not warranted in reversing it. If based on finding that the land contended for is in the state of Arkansas, and that, therefore, the Mississippi court is without jurisdiction, we approve it. In this case we find merely a contested title, the parties fighting at arms' length, and, if Mississippi courts may in this case take jurisdiction, they may do so in any case involving controversy of the right to land in any other state when they have the parties before them.

There is no question here of the specific performance of contract, enforcement of trust, fraud, accounting, or the doing of any act which, from previous dealings, is binding on the conscience of a party. 1 Pom. Eq. Jur. (3d Ed.) § 298; 4 Pom. Eq. Jur. (3d Ed.) § 1318; 5 Pom. Eq. Jur. (3d Ed.) § 17.

*Affirmed.*