Equality in this respect is fair. The real purpose of the examination is to discover to defendant "the nature and extent of the injuries complained of." The section gives the court no express authority to require the defendant's physicians to disclose before the trial the results of their examination of plaintiff, and I shall not venture to imply such authority. The failure of the Legislature to require any examination of the examining physicians before the referee or any report to be made and filed by them is, to my mind, satisfactory evidence that nothing of the kind was contemplated when the amendment of 1893 was enacted, and that it was expected that such physicians would merely testify, like other witnesses, on the trial, if called by either party.

[4] It is urged by plaintiff that Dr. Wilson is an officer of the court by virtue of his designation as an examining physician and surgeon under the order herein, and that the court, therefore, has inherent power to order him to make such report. But the physicians and surgeons designated under section 873 take no oath of office and have no statutory fees. While the court may, in its discretion, designate physicians and surgeons not nominated by the defendant, they are under no duty or obligation to act until defendant employs them to make the examination. Thus they necessarily become the employés of the defendant before they act, and, when they act, it is in that capacity. As the very object of the section would be defeated if they did not thoroughly make the examination and freely and fully impart to defendant the results thereof, they should be satisfactory to defendant, provided always that there are no objections to their personal character or professional standing or to their availability in a given case. I conclude that they cannot be compelled, as officers of the court, to make a report to it.

Motion denied.

---

## DE GRAFFENRIED v. DE GRAFFENRIED.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

DIVORCE (§ 331*)—FOREIGN DIVORCE—PROPERTY OF WIFE CONVEYED TO HUSBAND.

> Plaintiff, a citizen of New York, married defendant, a citizen of Switzerland, in France. Subsequently plaintiff bought, with her own money, real property in New York, and conveyed in fee simple one-half interest to her husband. Thereafter plaintiff secured a divorce in Switzerland, the domicile of her husband. The law of Switzerland at the time required the husband, after his wife had secured a divorce, to transfer to her all of her property in his possession and all property which she had transferred to him, while the law of New York gave the wife the right to transfer her real property as she pleased. Held, that the law of New York governed, and whatever title or interest the husband acquired by the conveyance remained undisturbed on the divorce.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. § 331.*]

Scott and Miller, JJ., dissenting.

---

Appeal from Special Term, New York County.

Action by Gertrude Van Cortlandt, Baroness de Graffenried, against Baron Raoul de Graffenried. From an order overruling the demurrer to the second cause of action alleged in the complaint, defendant appeals. Reversed, and the demurrer sustained.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Thomas P. De Graffenried, for appellant.

Howard T. Kingsbury, for respondent.

INGRAHAM, P. J. The defendant demurs to the second cause of action set up in what is called the amended and supplemental complaint, which seems to be the only complaint in the action, and on which plaintiff seeks to recover. The ground of demurrer is stated to be that the second alleged cause of action contained in the amended and supplemental complaint herein does not state facts sufficient to constitute a cause of action. It is alleged in this second cause of action that the plaintiff, who was a resident and citizen of the state of New York, was married at the city of Paris in the republic of France, to the defendant, where he then resided, on the 17th of April, 1901; that on October 30, 1903, after her marriage, plaintiff purchased certain real property situated in the city and county of New York, which is specifically described in the complaint; that subsequently the plaintiff executed and delivered to the defendant a conveyance of an undivided one-half interest in said premises, which conveyance bears date November 4, 1903, and was duly recorded in the office of the register of New York county; that said conveyance was absolute in form, and purports to convey to the defendant, the grantee therein mentioned, an undivided one-half interest in said property in absolute ownership, but was executed and delivered by plaintiff without consideration; that in the year 1908 the defendant, who was then residing in the canton of Geneva, in the republic of Switzerland, brought an action in the Court of First Instance in and for said republic and canton, being a court having jurisdiction in the premises, against the plaintiff herein for a divorce on the ground of malicious desertion and grave injuries under the law of said republic and canton; that the plaintiff (being the defendant in said action for divorce) appeared therein and demanded a divorce in her favor against her husband (the defendant herein) on the ground of grave injuries under the law of said republic and canton; that said action was duly tried in said court, and on or about December 13, 1910, said court denied the divorce applied for by the husband (the defendant herein), and granted a divorce in favor of the wife (the plaintiff herein) upon the ground of grave injuries under the law of said republic and canton, and that no appeal was taken from that judgment; that prior to and since the marriage of the parties to this action it was the law of the republic of Switzerland that the relative property rights of divorced spouses are governed by the law of the canton to the jurisdiction of which the husband was subject, and that prior to and since the marriage of the parties the defendant has been and still is a citizen

of the canton of Berne and subject to its jurisdiction; that prior to said marriage and since that time and at present the law of the canton of Berne is that all property belonging to a wife at the time of her marriage, and all property acquired by her during the marriage by gift, inheritance, or will, passes under the management and control of the husband, and that at all times during the marriage the husband is and remains accountable to the wife for the value of all such property and of all property transferred by her to him, and that upon a divorce the husband is under an obligation to return to the wife all property given, transferred, or conveyed by her to him during the marriage or otherwise contributed by her to the conjugal assets; and that the law of the republic of France, where said marriage was celebrated, and the law of the canton of Geneva, where said divorce was granted, is that the party against whom the divorce must return to the other party all property or benefits given by said other party to the party against whom the divorce was granted either by marriage contract or subsequent gift or conveyance.

On these facts the plaintiff demands a judgment that the conveyance of the said undivided one-half interest in said premises described in the complaint be canceled and set aside, or that said conveyance be reformed so that the defendant have and hold the premises therein conveyed to him for and during his natural life, or until he and plaintiff cease to live together as husband and wife, and that, upon such death or separation, said half interest shall revert to and vest in the plaintiff, if then living, and, if not, then that it shall revert to and vest in the children of said plaintiff by her former marriage; that the court determine that the plaintiff and defendant have ceased to live together as husband and wife, and that the defendant has not now and has not had since March 1, 1906, any right, title, or interest to or in or claim upon said premises or said half interest therein; and that the defendant be directed forthwith to execute and deliver to the plaintiff a reconveyance of said half interest in said premises, and for other relief.

Under the allegations of this cause of action, the plaintiff, who was a citizen of this state, married with the defendant, who was a subject of the republic of Switzerland; this marriage having been consummated in the city of Paris, in the republic of France. The question as to whether the law of Switzerland or the law of France controlled as to the rights acquired by the parties to·that marriage is not material at this time. It is not alleged whether the parties subsequent to the marriage did or did not reside in France or acquire there a matrimonial domicile. What the plaintiff seeks to do is to import into the rights of these parties as effecting real property the law either of France or of Switzerland, so as to affect or qualify the title to real property within this state, or impose upon the grantee of real property within this state an obligation to transfer or convey it, by reason of the rights acquired by the parties to a matrimonial alliance entered into in a foreign country. Nor is the question presented as to the rights of the parties in relation to personalty, whether located in this state, of which the plaintiff was at the time of

her marriage a citizen, or in either the republic of France or the republic of Switzerland.

The plaintiff, having been married in France to a citizen of Switzerland, with her own money subsequently acquired real property within this state. Under the law of this state, she became the absolute owner of that property. Over it her husband, regardless of the law of Switzerland or France, had absolutely no control. She could incumber it or convey it, devise it, or transfer it, as if she were a single woman. Neither her husband's opposition nor consent could in the slightest degree affect her absolute power of disposing of it. She voluntarily, by the execution and delivery of a deed, conveyed to the defendant an undivided half interest in the property. There was no limitation upon that conveyance; and, exercising her absolute and uncontrolled right to do with the real property what she pleased, she conveyed to the defendant an undivided half interest in the property, without restriction or limitation. The effect of that conveyance was to vest in the husband title in fee simple to an undivided half interest in the property. He became the owner of the interest in him as absolutely as, before the conveyance, the property conveyed had vested in the plaintiff. So far as this real property is concerned, the conveyance was controlled by the laws of this state, and the interest he acquired by the execution and delivery to him of such conveyance was determined by the law of this state. Prior to the time of that conveyance, while the plaintiff held the absolute title to the property, the law of Switzerland, no matter what it was, would have given to the defendant no interest, either of management or control, right to receive the rents or profits, or right to interfere in any way with the plaintiff's absolute uncontrolled possession of it; and, after the conveyance, the interest of the wife that the plaintiff had in the property conveyed to the extent of the conveyance vested absolutely in the defendant. And the question is whether this interest so absolutely vested was controlled by the law of Switzerland or France in relation to any obligation of the defendant in regard to the interest that he acquired by this conveyance.

In 1861 there was presented to the Court of Appeals of this state (Bonati v. Welch, 24 N. Y. 157) the question as to the rights of a wife, who was a citizen of France, and who had married a citizen of Germany, and who were domiciled in and who resided in France at the time of the marriage. The parties to that marriage continued to live together in France until 1837, when the husband deserted the wife and came to New York. The wife and her children continued to reside in France. The husband became a naturalized citizen of the United States, and resided in this state until his decease. In 1830, before the desertion, the wife became the owner of certain real estate located in France, which was sold by mutual consent of the husband and wife, and the money arising from the sale was paid to and retained by the husband. The husband had never accounted for or paid any part of it to the wife, except to a very limited extent. The husband died in this state, leaving a last will and testament, which made but small provision for his children by the French wife, and

no provision at all for her.  The French law in existence at that time provided that, upon the death of either party, there was a dissolution of the community which existed between the parties to the marriage, and that upon that dissolution the wife was entitled to be repaid the money which the husband had received as part of her property.  The court states that the result of its examination of the law of France was that the husband had the management of this property and the right to retain the avails of the sale and keep them during the existence of the community, and that on his death his wife had a valid claim against his estate for the price, first to be paid out of the property of the community, and, that failing, out of the property of the husband; that this would have been the rights of the parties had they remained domiciled and resident citizens of France.  The court, after examining the authorities, cites with approval a statement by Judge Story on Conflict of Laws, § 159, as follows:

"In case of a marriage, where there is no special nuptial contract and there has been no change of domicile, the law of the place of celebration of the marriage ought to govern the rights of the parties in respect to all personal or moveable property, wherever acquired or wherever situated, but that real or immoveable property ought to be left to be judged by the lex rei sitæ, as not within the reach of any extraterritorial law."

And this statement of the law has been, as I understand it, adopted in England and generally in the United States.  Here the broad distinction is stated as between the rule applicable to real and personal property, personal property being by reason of its movable qualities deemed to be in the possession of its owner wherever that owner is, and consequently the title to it and right to it depends upon the law in existence at the domicile of the owner.

An entirely different rule, however, applies as to real property.  Because of its nature and characteristics, the title to it and the rules regulating its conveyance or transfer by deed or will necessarily must be controlled by the law of the place in which the property is situated, and the right either to it or to receive a conveyance of it must necessarily depend upon such law.  If an oral contract to convey real property in this state were made in a foreign country where such a contract was valid, I assume that the courts of this state would refuse to enforce it where such a contract, to be enforced, must be in writing.  If by a marriage contract the law of the foreign state gave to a husband a life estate in the wife's real property, or the right to manage and control the wife's real property during coverture, I assume that that right would not be enforced in this state, where the law vests absolutely in the wife the entire control and the right to receive the rents of her real property.  As I understand it, neither by contract not enforceable in this state nor by the law of a foreign state can the law of this state as to a wife's absolute control of her property be affected.  To affect it in any way, the right of the husband must be secured to him by the law of this state.  And this general rule of law is clearly recognized in Matter of Majot, 199 N. Y. 29, 92 N. E. 402, 29 L. R. A. (N. S.) 780.

In that case, the court, after a careful examination of the author-

ities, again cites with approval Judge Story on Conflict of Laws (8th Ed.) p. 267, stating generally the rule that:

"Where there is no express contract, the law of the matrimonial domicile will govern as to all the rights of the parties as to their present property in that place, and as to all personal property everywhere, upon the principle that moveables have no situs, or rather that they accompany the person everywhere. As to immovable property the law rei sitæ will prevail."

In discussing the question, the court say:

"Under our statute, every agreement made in consideration of marriage is void unless it be in writing, except a mutual promise to marry. * * * It is thus apparent that we cannot recognize tacit ante-nuptial contracts."

By the law of this state, the title to an undivided half of this real property vested absolutely in the defendant. The title was unaffected by the fact that the grantor was his wife. There was no implied or express contract that could be enforced in this state which, under any conditions, would entitle the plaintiff to a reconveyance of the property. No contract existed between the parties that could be enforced in this state which affected in any way the title conveyed to the defendant, and which he acquired by the conveyance.

What the plaintiff seeks to obtain is an adjudication that, notwithstanding the absolute character of the conveyance, it was not what it purported to be upon its face, but was governed by the law of Switzerland or France which imposed an obligation upon the defendant to reconvey the property upon severance of the marriage relation existing between himself and the plaintiff; and this is to be accomplished by the adjudication that the conveyance of the fee was not a conveyance of the fee, but was only to continue during the existence of the marriage relation, or by decreeing a reconveyance, because by the law of his domicile or his marriage the husband was obliged to reconvey. Whatever effect this condition would have upon personalty in this state certainly, as I view it, it cannot affect the title in real property acquired by the defendant or impose upon him any obligation which would by its enforcement substantially change the title acquired by him under the law of this state by reason of the conveyance.

My conclusion, therefore, is that the title to and right to possession of this property depends entirely upon the effect which the law of this state gives to the conveyance of one-half interest in it to the defendant, and that this state will neither by decree adjudge that the defendant had a different title to this property than that which he acquired by the conveyance, nor compel him to reconvey to the plaintiff upon the ground that any tacit or legal obligation imposed by the law of another state required such reconveyance.

The judgment, therefore, must be reversed, with costs, and the demurrer to the second cause of action sustained, with costs, with leave, however, to the plaintiff to amend the second cause of action within 20 days on payment of costs in this court and in the court below

LAUGHLIN and CLARKE, JJ., concur.

SCOTT, J. (dissenting). It is well at the outset to define the precise theory upon which the plaintiff sues, and upon which she must succeed, if she can succeed at all. She does not claim any right to a reconveyance under her marriage contract, nor under the laws of France, where her marriage took place. This seems to differentiate the present case from Matter of Majot, 199 N. Y. 29, 92 N. E. 402, 29 L. R. A. (N. S.) 780, upon which defendant much relies. In that case the parties, having been married in France, without written contract, removed to this state, where the husband acquired real and personal property. The question arose as to the imposition of the transfer tax after his death. His widow claimed that one-half of the property did not pass under the intestate laws of this state, but belonged to her by virtue of the community or partnership existing between herself and her husband by the law of France, the matrimonial domicile, and had been hers from the date of marriage, or the date of acquisition subsequent to the marriage. Her claim thus was that the law of France operated directly upon the property, so as to vest title to one-half of it in her. No such claim is made by the plaintiff in the present case. She does not claim that the laws of Switzerland or the divorce itself operated directly upon the real estate in the state so as to revest the title in her. Her claim is that, under the laws cited in the complaint, the divorce granted in Geneva by a court the jurisdiction of which is admitted is a judgment in personam which among other things imposed upon the husband an obligation, sometimes called a quasi contract, to reconvey to her what she had given to him during the existence of the marriage.

We see no reason why such an obligation may not be enforced by the courts of this state by means of a divorce for specific performance. If such a decree were made and carried out, the title to the property would be revested in plaintiff by means of the deed executed in accordance with the laws of this state. If two parties executed a proper contract in a foreign country for the sale of real property in this state, we should find no difficulty in specifically enforcing it merely because it had been executed abroad, and this case does not differ in principle from that except that here the obligation to convey rests upon a judicial decree. It is perfectly clear, and the plaintiff does not contend to the contrary, that neither the laws of Switzerland nor the decree of its court operates directly upon the title to real property in this state. They can, however, create an obligation which may be enforced here, if jurisdiction of the defendant be obtained, just as any other decree of a foreign court may be enforced. It is well settled that the transfer of title to real property is governed by the law of its situs, and that the decree of a foreign state cannot act directly upon it, yet the courts of a foreign state may make its decree, respecting the title to property in another state, effectual through the coercion of the defendant, as, for instance, by compelling a deed to be executed or canceled in behalf of the party. Carpenter v. Strange, 141 U. S. 87–106, 11 Sup. Ct. 960, 35 L. Ed. 640; Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924. The principle for which

plaintiff contends is but the converse of the rule laid down in these cases. In Fall v. Eastin, Mr. Justice Holmes distinctly asserts the principle. The question at issue was as to the effect of a decree of a court of the state of Washington upon real property situated in the state of Nebraska. Mr. Justice Holmes said:

"As between the parties to it, that decree established, in Washington, a personal obligation of the husband to convey to his former wife. A personal obligation does with the person. If the husband had made a contract valid by the laws of Washington to do the same thing, I think there is no doubt that the contract would have been binding in Nebraska. So I conceive that a Washington decree for the specific performance of such a contract would be entitled to full faith and credit as between the parties in Nebraska."

In my opinion the present complaint sets forth a legal obligation on the part of the defendant to reconvey to plaintiff, which it is the right and duty of this court to enforce by a decree for specific performance.

The order appealed from should be affirmed, with costs.

MILLER, J., concurs.