**COFFEY v. MANAGED PROPERTIES,**
Inc., et al.
**No. 338.**

Circuit Court of Appeals, Second Circuit.
July 23, 1936.

Strange, Myers, Hinds & Wight, of New York City (Roger Hinds, of New York City, of counsel), for appellant Managed Properties, Inc.

Victor R. Carpenter, of Mount Vernon, N. Y. (Bern Budd and Frederick F. Hufnagel, both of Bronxville, N. Y., of counsel), for appellee William S. Coffey, as Trustee in Bankruptcy of estate of Frank R. Pierson.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Frank R. Pierson owned two plots of land in Buffalo, N. Y., on one of which there was a mortgage of $43,000 to Betsy Smith, which by January 31, 1934, had by payments been reduced to $5,750. On that date Pierson executed a mortgage to the defendant Hitchings & Co. to secure payment of $25,000. The $25,000 mortgage covered both plots and was made subject to the prior mortgage to Betsy Smith on one of them. The defendant Hitchings & Co., already held a mortgage upon certain land and greenhouses in Westchester county, N. Y., which it had received from the defendant Pierson Parkway Greenhouses, Inc., as security for the latter's notes. The notes were made payable to the order of Pierson, bore his indorsement, and, by January 31, 1934, had been reduced to $43,-000. The notes and mortgages represented a balance owing to Hitchings & Co. upon the sale of the greenhouses and land to Pierson Parkway Greenhouses, Inc. The mortgage for $25,000 on the Buffalo lots was given by Pierson as alternative collateral in exchange for his liability as indorser on the notes of the Pierson Parkway Greenhouses, Inc. On May 6, 1935, Hitchings & Co. assigned the $25,000 mortgage to Managed Properties, Inc.

On February 26, 1934, Marion E. Hewson, holder at that time of the mortgage formerly belonging to Betsy Smith, began a foreclosure of the mortgage, which covered one of the Buffalo plots, and on July 25, 1934, assigned the mortgage to the defendant Starck, a nominee of Hitchings & Co., who was substituted as plaintiff in the foreclosure suit. At the foreclosure sale he purchased the plot covered by the mortgage, on November 5, 1934, received the referee's deed therefor, and on March 11, 1935, conveyed it to defendant, Managed Properties, Inc., which was a wholly owned subsidiary of Hitchings & Co. On August 28, 1934, the latter company began suit to foreclose its mortgage on the Westchester Greenhouses, on January 30, 1935, bought the property at the foreclosure sale, and on May 4, 1935, transferred the title to Managed Properties, Inc.

On June 8, 1934, an involuntary petition in bankruptcy was filed against Pierson, on September 18 following he was adjudicated a bankrupt, and on September 27 the complainant William S. Coffey became trustee. He brought the present suit alleging the foregoing facts in the bill of complaint, alleging that Pierson was insolvent at the time when the mortgage for $25,000 was given and also alleging that Hitchings & Co. then had reasonable cause

to believe that such insolvency existed. The complaint further alleged that the mortgage on the Buffalo property for $25,000 was given without consideration, that the Buffalo lots were worth upwards of $60,855, and that the greenhouses and lots which had been bid in for a nominal sum were actually worth upwards of $100,000. The bill of complaint further alleged that the procurement of the mortgage was fraudulent and was for the purpose of creating an unlawful preference, and prayed that the $25,000 mortgage and the conveyances of the Buffalo properties to Starck and Managed Properties, Inc., be declared unlawful, that the Buffalo properties be decreed to belong to the complainant as trustee for the bankrupt's estate, and that the defendants be ordered to account for any rents. Upon the bill and a petition and affidavits the trustee moved for a preliminary injunction.

From the papers submitted on the motion it appeared that after the making of the $25,000 mortgage and before the bankruptcy petition was filed, Pierson had conveyed all the Buffalo lots (subject to the mortgage to Betsy Smith on one of the plots) to one John W. Smith in trust for certain of Pierson's employes. The deed to John W. Smith was attacked in a suit by the trustee, but that suit was settled, with the approval of the court, and Smith conveyed an undivided one-half of the lots to the trustee in bankruptcy. Upon the foregoing facts the court granted a preliminary injunction restraining Managed Properties, Inc., from selling or encumbering the Buffalo property and from assigning, encumbering, or enforcing the $25,000 mortgage. From the order granting the injunction the present appeal was taken. We think that an injunction pendente lite should not have issued.

The first objection to the order of the court below is lack of jurisdiction of the cause for the reason that the land affected is in Buffalo (in the Western District of New York) and the suit, therefore, was a local one and should have been brought in the Western District. But the remedy sought is under section 70e of the Bankruptcy Act (11 U.S.C.A. § 110 (e), namely, to reach property transferred in fraud of creditors.

Subdivision (e) of section 70 reads thus: "For the purpose of such recovery any court of bankruptcy as hereinbefore defined [in this title], and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Whether, in view of section 54 of the Judicial Code (28 U.S.C.A. § 115), authorizing the bringing of local actions in the district where property is situated, section 70e is broad enough to cover actions by the trustee such as ejectment or replevin directly operating on land or chattels, we need not say, and whether the District Court for the Southern District of New York could order the cancellation of a lis pendens filed in Erie county likewise need not be decided. If the trustee is entitled to a decree of any kind in his behalf, he can secure ample relief through one that operates in personam, directs a reconveyance of the lands to the complainant and a cancellation of the mortgage in question, and orders an accounting. Such relief has repeatedly been granted. Massie v. Watts, 6 Cranch, 148, 3 L.Ed. 181; Galbraith v. Robson-Hilliard Grocery Co., 216 F. 842 (C.C.A.8); Thomas v. Woods (C.C.A.) 173 F. 585, 26 L.R.A.(N.S.) 1180, 19 Ann.Cas. 1080; Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A.(N.S.) 924, 17 Ann.Cas. 853.

The decision in Collett v. Adams, 249 U. S. 545, 39 S.Ct. 372, 63 L.Ed. 764, is not contra. There the court merely held that the suit, which was to set aside a preferential transfer of land, was local in nature and would, therefore, lie in the court of the district where the property was situated, also that the defendant, though residing in another district, might, under the provisions of section 54 of the Judicial Code, be reached by original process sent to and served in the district of his residence. The court did not, however, intimate that the suit could not be brought elsewhere.

The defendants have further argued that the court below lacked jurisdiction because the foreclosure was against the record title of Smith to whom Pierson had conveyed the Buffalo lands in trust for wage-earners. This objection is entirely futile. Not only did there remain, after the conveyance in trust to John W. Smith, an equity in Pierson which might have value to the bankrupt estate after he had fulfilled his trust, but Smith had reconveyed a portion of the property that is subject to the $25,000 mortgage to the trustee in bankruptcy. Moreover, the trustee is attacking the title to the lots bought in by Starck under the foreclosure of the Betsy Smith mortgage and transferred by

him to Managed Properties, Inc. If the grounds of attack are valid, it should make no difference that the transfer was not directly from Pierson to Starck or Managed Properties, Inc., but indirectly by means of a fraudulent foreclosure. Certainly a court of equity could avoid the fraud whatever might be the means of its perpetration.

The difficulty with the trustee's case is not because of lack of jurisdiction in the District Court, but because of the insufficient showing on the merits of the claim which he asserts. We need not say whether one who has procured a second mortgage by fraud will in general be permitted to buy up a prior mortgage and by foreclosure eliminate the owner, be such owner a trustee in bankruptcy or any other person. Humphrey v. McCleary, 171 Minn. 197, 213 N.W. 892. To tolerate such conduct, when fraudulently designed in order to impede creditors, would seem to impose a great strain upon the conscience of a court of equity. Compare Davitt v. O'Connor, 73 F.(2d) 43 (C.C.A.2). The acquisition of the second mortgage, the purchase of the first mortgage, and its foreclosure in a suit in which there was no representation of creditors whose rights were prejudiced might, if the second mortgage were shown to have been taken under fraudulent circumstances, justify an avoidance of the entire transfer to Managed Properties, Inc. But the claim of fraud seems in the present case to be based on little more than a mere outcry. No fraudulent purpose has been demonstrated. No convincing proof was offered indicating that the security of the mortgages held by Hitchings & Co. on the greenhouses was adequate or that when augmented by the acquisition of the $25,000 mortgage on the Buffalo lots it became excessive. The fact that the mortgage on the greenhouses had been reduced by payments on account of the notes held by Hitchings & Co. from $65,000 to $43,000 is no proof that their collateral was still sufficient to secure their claim without receipt of the $25,000 mortgage on the Buffalo land. The shrinkage in land values which occurred after the year 1929 made any such mortgage doubtful security and additional collateral highly desirable. The mere assertion on behalf of the trustee that the greenhouses had a value of $100,000 was far from convincing. If, as complainant insists, Pierson was insolvent, or his insolvency was imminent, when he gave the $25,000 mortgage, it is more likely that Hitchings & Co. needed further security than that they received excessive collateral. When they received the mortgage, they apparently got it in return for surrendering their claim against Pierson as indorser of the notes of Pierson Parkway Greenhouses, Inc. The surrender of the right to recover on the indorsements furnished a substantial consideration for the delivery of the mortgage and rendered their legal and equitable title immune. But if the transfer was without present consideration and Hitchings & Co. thereby acquired nothing but additional security for an antecedent debt, nevertheless the transfer was of an amount of property not shown to have been more than sufficient to furnish reasonable security so that it cannot be successfully attacked as a fraudulent conveyance. We do not regard Justice Cardozo's opinion in Buffum v. Peter Barceloux Co., 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140, as contrary to anything we have said. No such excessive security was taken by Hitchings & Co. as to justify the inference of fraud found to exist in Buffum v. Peter Barceloux Co. At most, there was nothing more than a preferential payment made prior to the four months' period.

The record indicates a very tenuous claim, and the proof that when the second mortgage was received the creditor had reasonable cause to believe insolvency existed is far from satisfying. The trustee must have had data available as to the financial condition of the bankrupt and must have been in position to submit convincing proof of the facts. The bankrupt had evidently been a man of large affairs, and under the circumstances it ought to have been possible for the trustee to establish in a more authentic and definite fashion than he has done just what properties the bankrupt had, what in the opinion of competent experts was their value, and what were the liabilities. Inadequate proof of insolvency on January 31, 1934, was furnished, and the attempt to meet the affidavits on behalf of the defendants indicating that they had reason to believe that Pierson was solvent was unsatisfactory. Certainly the trustee's case was too unsubstantial to justify the granting of an injunction pendente lite even if there be some basis for ultimate recovery. Accordingly, the order should be reversed.

Order reversed.