## AMEY v. COLEBROOK GUARANTY SAV. BANK.*
### No. 451.

Circuit Court of Appeals, Second Circuit.
July 26, 1937.

McLane, Davis & Carleton and John P. Carleton, all of Manchester, N. H., for appellant.

Arthur L. Graves, of St. Johnsbury, Vt., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The appeal is from an interlocutory decree in a suit for an accounting, which among other things appointed a receiver, and enjoined the defendant from interfering with him by suit or otherwise in the conduct of his duties. The suit was for an accounting between the plaintiff and the defendant, a New Hampshire savings bank, the assignee from another bank—also a defendant—of a mortgage upon the plaintiff's half interest in some timber lands in Maine; the other half being owned by his

*Writ of certiorari denied 58 S.Ct. 271, 82 L.Ed. —.

brother, John T. Amey. The cause is in issue, and the court finds for the purposes of this decree, that the plaintiff owes nothing upon the mortgage, but that on the contrary the balance on their joint account is against the defendant. He also finds that the mortgaged property is in need of care; and that the timber should be cut in order that its best value may be realized. To insure this the plaintiff and his brother have entered into a contract with Gage & Gage, a firm of lumbermen in Vermont, to cut the timber by approved methods, to buy it and to pay the proceeds to them. In order to get the court's approval of this contract and to prevent the defendant from interfering with its performance in Maine, the plaintiff moved in this suit for a receiver to superintend the work of the lumbermen in Maine, to protect the interest of both parties to the suit, to receive the plaintiff's share of the proceeds, and to enjoin the defendant from taking any steps to interfere with the lumbermen. The defendant objected that the District Court of Vermont had no power to adjudge interests in real property in Maine, and that for this reason it should not enjoin resort to the courts of Maine, or appoint a receiver. The judge thought otherwise; he held that, having jurisdiction over the defendant in personam, he might compel it to do whatever was necessary to effect justice between the parties; and, since the lien of the mortgage had been in fact already discharged, that he might enjoin the mortgagee from taking any action to interfere with the plaintiff's use of the land. The decree entered, (1) gave leave to cut the timber under the lumbering contract with Gage & Gage; (2) appointed the brother, John T. Amey, a receiver "to supervise the cutting" and scaling and to collect the proceeds to be held subject to the order of the court; and (3) enjoined the two defendant banks "from hindering, delaying, interfering or meddling * * * by the institution of litigation or otherwise with the carrying out of said contract," or with the receiver in his duties. Later the judge "found" that the proceeds should be deposited in the registry of the court.

The word, "jurisdiction," is in this connection somewhat equivocal; in one sense the judge had it; the bank had personally appeared and was subject to his orders, as far as any corporation can be; he might sequester its property in Vermont, if he could find any, or he might proceed against its officers as for a contempt. But although he thus had the power to prevent the defendant from asserting its rights in Maine, it might still be improper for him to do so. Courts do not always exert themselves to the full, or direct parties to do all that they can effectively compel, and such forbearance is sometimes called lack of "jurisdiction." What reserves a court shall make, when dealing with real property beyond its territory, is not altogether plain; as to some things, it will act freely when it has before it those who hold the legal interests. The most common example is a decree for specific performance of a contract for the sale of land. The earliest case apparently was Archer v. Preston, cited in 1 Eq.Cas.Abr. 133, decided before 1686; and Lord Hardwicke's judgment in Penn v. Lord Baltimore, 1 Ves. 444, put the question at rest. See, also, Sutphen v. Fowler, 9 Paige (N.Y.) 280. Express trusts of lands beyond the court's arm will also be enforced. Kildare v. Eustace, 1 Vern. 419; Smyrna Theatre Co. v. Missir, 198 App.Div. 181, 189 N.Y.S. 4. Bills to redeem or foreclose, at least if the foreclosure be strict, will be entertained, since the mortgagee may then be compelled to convey. Toller v. Carteret, 2 Vern. 494. The same is true also if the mortgagee has a power to sell. Muller v. Dows, 94 U.S. 444, 448–450, 24 L.Ed. 207. Constructive trusts are no different from express ones. In Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181, and Gardner v. Ogden, 22 N.Y. 327, 78 Am.Dec. 192, an agent had taken over the land in violation of his duty; in Irving Trust Co. v. Maryland Casualty Co., 83 F.(2d) 168 (C.C.A.2), and Coffey v. Managed Properties, Inc., 85 F.(2d) 88 (C.C.A.2), the defendant had received a voidable preference. Lord Nottingham rather contemptuously overruled an objection to his jurisdiction in a case involving actual fraud in Arglasse v. Muschamp, 1 Vern. 76, 1 Vern. 135; and Lord Cranstown v. Johnston, 3 Ves.Jr. 170, is to be read as a case of fraud. Apparently these exceptions led Marshall, C. J., to say in Massie v. Watts, supra, that a court would intervene only in cases of contract, fraud, or trust, and this has been often repeated. It is almost certainly too narrow a statement; it does not cover, for example, Bailey v. Ryder, 10 N.Y. 363, where a debtor was compelled to convey foreign lands to a creditor; or those cases where a divorced husband is compelled to con-

vey foreign lands to his wife. Zentzis v. Zentzis, 163 Wis. 342, 158 N.W. 284; Matson v. Matson, 186 Iowa, 607, 173 N.W. 127; Mallette v. Scheerer, 164 Wis. 415, 160 N.W. 182. It would be more nearly true to say that the court may enforce any personal obligation of the defendant, either to convey to the plaintiff, or—as in the case of express trusts—to hold the land for his benefit.

When there is no such obligation, under the more general rule and the better considered decisions, courts will abstain. Northern Indiana R. R. Co. v. Michigan Central R. R. Co., 15 How. 233, 14 L.Ed. 674; Carpenter v. Strange, 141 U.S. 87, 105, 106, 11 S.Ct. 960, 35 L.Ed. 640; Norris v. Chambres, 29 Beav. 246; Deschamps v. Miller, (1908) 1 Ch. 856; Caldwell v. Newton, 99 Kan. 846, 163 P. 163; O'Connor v. Petty, 95 Neb. 727, 146 N.W. 947; Sutton v. Archer, 93 Miss. 603, 46 So. 705. Indeed in Middleton's Trustee v. Middleton, 172 Ky. 826, 189 S.W. 1133, and Olympia M. & M. Co. v. Kerns, 64 Wash. 545, 117 P. 260, the court even refused to entertain bills on an express trust and for specific performance, because questions of foreign title were involved. The question at times comes up collaterally, when the full faith and credit of the judgment of another state is at issue. In Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A.(N.S.) 924, 17 Ann.Cas. 853, the Washington court in a decree of divorce had directed the husband to convey Nebraska land to his wife. He did not comply, and she later brought suit in Nebraska to clear the land of the cloud of a conveyance by the husband to a third person. The court might have held that the husband's grantee, who took with notice, was under the same personal obligation as he; and that, although the Washington decree had adjudicated nothing as to the interests in the land, his obligation to convey was res judicata. Holmes, J. obviously felt the force of this, and avoided it for reasons not necessary to consider; but the court appears to have held that even the obligation had not been finally adjudicated. The opposite view was taken in Burnley v. Stevenson, 24 Ohio St. 474, 15 Am. Rep. 621; Matson v. Matson, 186 Iowa, 607, 173 N.W. 127; Dunlap v. Byers, 110 Mich. 109, 67 N.W. 1067; Mallette v. Scheerer, 164 Wis. 415, 160 N.W. 182, and Redwood Inv. Co. v. Exley, 64 Cal.App. 455, 221 P. 973. On the other hand, Bullock v. Bullock, 52 N.J.Eq. 561, 30 A. 676, 27 L.R.A. 213, 46 Am.St.Rep. 528; Van Cortlandt v. DeGraffenried, 147 App.Div. 825, 132 N.Y.S. 1107, affirmed 204 N.Y. 667, 98 N.E. 1118; and Tiedemann v. Tiedemann, 172 App.Div. 819, 158 N.Y.S. 851, affirmed 225 N.Y. 709, 122 N.E. 892, are in accord with Fall v. Eastin, supra, and so is Duke v. Andler (1932) Can.Sup.Ct. 734. We need not concern ourselves with this difference of opinion; those courts which hold that the decree is not res judicata even as to the obligation, go further than we need go; those which hold that it is, do not decide that a decree would be valid which attempted to adjudicate interests in the land, either directly, or by means of an injunction. There are indeed decisions which cannot be reconciled with the law as we understand it. Schmaltz v. York Manufacturing Co., 204 Pa. 1, 53 A. 522, 59 L.R.A. 907, 93 Am.St.Rep. 782; Alexander v. Tolleston Club, 110 Ill. 65; Coulthard v. Davis, 151 Iowa, 578, 131 N. W. 1088. Schmaltz v. York Manufacturing Co., supra, and Alexander v. Tolleston Club, supra, appear to have gone on the theory that, as an injunction is negative and merely prevents action, a court which has personal jurisdiction may deny a defendant the enjoyment of his rights in foreign land; though even they did not enjoin his resort to the court of the situs. But in any event limitations upon a court's powers cannot be evaded by so easy a device. Northern Indiana R. R. Co. v. Michigan Central R. R. Co., supra, 15 How. 233, 14 L.Ed. 674. Philadelphia Co. v. Stimson, 223 U.S. 605, 622, 623, 32 S.Ct. 340, 56 L.Ed. 570, may be thought to countenance the opposite view; perhaps on the facts it does so, but plainly the court did not mean to impair the general doctrine.

The case at bar falls within that, and not within the exceptions. The bank had not assumed any personal obligation to allow the land to be stripped of its timber, and to accept in its place the obligation of the lumbermen, and it had done nothing which imposed such an obligation upon it; if it can be compelled to allow this to be done, it is because the law of Maine gives such a power to the mortgagor, as such. That is a question touching the extent and incidents of the mortgage; the relative powers of mortgagor and mortgagee; no decision could more directly adjudge and adjust their mutual interests; and only a court of Maine should undertake it. We do not forget that the judge has found that the mortgage has been paid in full. If he had

followed this by final decree, directing the defendant to convey its interest in the land, or to discharge the lien, this interlocutory decree would have been unnecessary; the bank would have lost all interest in the land. Such a decree would have been appealable, and could have been stayed, so that the defendant's security would not have been disturbed, until the whole controversy was decided; but no foreign court can discharge the lien, and that in effect is what this decree does. Hence the finding, though it may be in place to support the final decree, when it comes, is at present irrelevant; the defendant remains a mortgagee with the right to resort to the courts of Maine, and the injunction, and the approval of the lumbering contract, must be vacated.

So far, however, as the decree appoints a receiver of any money which he may already have collected, or may in the future collect, we can see no reason why it should not be affirmed. Nor do we see any reason why the judge may not authorize him—so long as the courts of Maine do not stop him—to superintend lumbering operations in Maine. Of course he has no status as receiver outside Vermont, and enjoys no more immunity than a private person; but a court may authorize its receiver to gather information anywhere of what may be useful to him in the discharge of his duties. He may go there as co-tenant, or he may go merely because he is curious; but while he is there he will have no powers derived from the decree of the District Court of Vermont.

The following passages of the decree are reversed: (1) "until further order of the Court certain hard and soft wood stumpage owned by the plaintiff and his brother, John T. Amey, as tenants in common may be cut and removed from Township 2, Range 3, N. B. K. P., Somerset County, Maine, pursuant to the terms of a contract entered into between the said Ameys and L. C. and E. L. Gage, dated May 25, 1936." (2) "the defendant banks, Colebrook Guaranty Savings Bank and Colebrook National Bank, and each of them, their respective officers, agents, servants and attorneys be, and they hereby are strictly enjoined and restrained from hindering, delaying, interfering or meddling, either directly or indirectly, by the institution of litigation or otherwise, with the carrying out of said contract, and from hindering, delaying or meddling with John

T. Amey, Receiver, in and about the duties of his appointment; all until further order of the Court in the premises, under the pains and penalties of being dealt with as for contempt in case of failure to abide by this order." The remainder of the decree is affirmed. Costs to the defendant.